## Case No. 2,817.
### CLARK v. CHICAGO.
#### [4 Biss. 486.] [1]
Circuit Court, N. D. Illinois. March, 1868.

MUNICIPAL CORPORATION—NEGLIGENCE—STEPS IN SIDEWALKS—DUTY OF CITY—ICE UPON THE SIDEWALKS.

1. The mere existence of a descent or step in the sidewalks of a city is not such a defect as to render the city liable for accidents to passengers in stepping from one elevation to another; the question is, whether the sidewalk or descent was properly constructed, in reference to the character of the city and condition of the streets.

2. The city is not bound, under all circumstances, to keep the sidewalks free from ice; it is only required to exercise reasonable diligence under the circumstances of the case.

[At law. Action by Charles Clark against the city of Chicago to recover damages for negligence.]

DRUMMOND, District Judge, charged the jury as follows:

The plaintiff on the morning of the 6th of February, 1866, was walking along the street at the corner of Randolph and Wells streets. Stepping upon what is called an apron, which, it is alleged, had some ice upon it, he slipped, fell and broke his leg. Doctor Pope was called in to set his leg. The healing process did not go on satisfactorily, and the surgeon came to the conclusion that it was necessary to amputate the leg, and called in

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Dr. Burgess, and at the end of a few days it was amputated, when hemorrhage set in, and other unfavorable symptoms. It was amputated again, and finally the patient's life was saved. For the injury resulting from this fall, and in consequence of alleged negligence on the part of the city, this action is brought.

The first question to be determined is, whether it can be maintained under the circumstances of the case. That depends upon two questions. First, was the city guilty of negligence as to the manner in which the apron was constructed, or as to the manner in which it was occupied and maintained at the time? Secondly, was the plaintiff guilty of any negligence which contributed in any considerable degree to the result?—because, even admitting that there was negligence on the part of the city, if the plaintiff was guilty of any negligence which contributed to the result, he cannot maintain this action against the city.

The first question is one of law and of fact, and which the jury, under the direction of the court, is to decide. This apron, as it appears, consists of boards or planks, constructed for the purpose of enabling passengers to pass over the space where the water flows down to the sewer and is carried off. This particular apron was not even with the sidewalk in passing across Wells street from the west sidewalk to the roadway of the street, but there was a descent or a step from the sidewalk down to the apron, and in stepping from the sidewalk to the apron the plaintiff slipped and fell.

In determining this question, of course we have to look to the nature and object of the apron, and the mode and manner of its construction. In the first place, was it properly constructed? Was it placed in such a position as to be safe with reference to the grade and structure of the streets and to the object in view? Secondly, was it kept and maintained properly at the time; that is to say, looking at it in its position as it then was, was it unsafe—was it dangerous?

In a city like this it cannot be said that the mere fact that there is a descent or a step from a higher to a lower elevation of the street or sidewalk constitutes a defect of such a character as to render the city liable for any accident which a passenger may meet with in stepping from one level to another. In properly grading the streets, it is impossible that there should be a smooth, level walk in all places. Therefore, it is not, I think, such a fault or defect as to make the city liable simply because there was a step from a higher to a lower level.

Still, it is the duty of the city in constructing these aprons to have reference to the condition of the crossing at the place where they are constructed. What might be suitable in one place might not in another. There should be a fitness in things, looking at the grade and condition of the streets at the

time. We have to build the streets gradually. We have to bring them up to grade gradually. We cannot expect the city to make complete streets at once. We must interpret their duty upon a reasonable basis in reference to the actual condition of affairs, and not require impracticable things from the city authorities. Looking at it in this light, was this apron constructed properly under the circumstances of the case? If it was, then, as a matter of course, so far as the structure is concerned, there was no fault on the part of the city. Then, was it maintained properly?—that is to say, in a proper condition.

The ground assumed on the part of the plaintiff is that ice was suffered to accumulate there, in consequence of which the accident happened. We must also, in looking at the question in this light, consider the circumstances of the case, and construe the duties of the city and its officers with reference thereto. The law requires of the city that it should keep its streets and sidewalks and crossings reasonably safe, all things considered. It does not require impossibilities, nor what is impracticable. I could not, then, instruct you that it was the duty of the city, under all circumstances, to remove the ice in mid-winter from the streets and crossings. That might be impossible. You must look at the question, therefore, by the light of the circumstances existing at the time, the state of the temperature and of the weather, taking all these things into consideration. Was it something required of the city and of the officers of the city that the ice at this particular apron should be removed at that time?

It must be admitted that while it was not the duty of the city, under all circumstances, to remove the ice from the streets or crossings, still, if there was anything out of the ordinary course of things which rendered the sidewalk and crossings especially dangerous, and which could have been removed, that it ought to have been done. For example, if there should be on one of the aprons, or at one of the crossings, anything which in its nature was especially dangerous, it would be the duty of the city to cause it to be removed. If there was an accumulation of ice which rendered that crossing especially dangerous, I think it was the duty of the city to remove it, while it might not have been its duty to remove entirely the ice from the apron. We have to apply a reasonable rule to the officers of the city in determining what is their duty in the premises. No absolute, inflexible rule can be laid down. You have to judge of the action of the city under the special circumstances of the case.

I cannot, therefore, instruct you that the mere fact that there was ice upon this apron in the early part of February, 1866, did of itself, irrespective of all other circumstances, constitute negligence on the part of the city. I would not impose so harsh a rule upon the

city authorities as to require them to cause all the ice that should be upon the sidewalks or crossings, at such an inclement season of the year, to be removed.

Verdict for defendant.