### JOHN CLOUGHESSEY vs. THE CITY OF WATERBURY.

Where there is ice on a city sidewalk over which there is much travel, in such condition as to be dangerous to travellers, and the city has ample notice of the fact and can with reasonable expenditure make the walk safe, it ought to remove the danger and is responsible for the consequences if the duty is neglected.

But if a large territory is suddenly covered with ice, its removal or the protection of the public in travelling over it would be impracticable, and the same duty does not exist.

A city is not bound to do for its public streets when there is ice upon them what it is bound to do for its sidewalks.

It is not necessary that there should be such an accumulation of ice and snow as to cause an obstruction.

It is not necessary that there should be any structural defect in the walk itself.

The duty and liability of cities with respect to ice and snow upon public ways are greater than those of country towns.

The statute (Gen. Statutes, p. 232, sec. 10,) provides that no action for an injury from a defective road shall be maintained against any town or city, "unless written notice of such injury and of the time and place of its occurrence" shall within a certain time be given. The place where an injury was received by a fall on the ice on a city sidewalk was described in the notice as "the sidewalk in Bank street, at a point on the west side of the street in front of the property No. 117, occupied by D. B." The place was in fact on the east side of the street. Held that if the notice had given no other descriptive particulars except that it was on the west side of the street named, it would have been insufficient; but that the further description was sufficient for the identifica-

tion of the place, and that the correct part, being sufficient, was not harmed by the false part.

"On the sidewalk in front of No. 117" means in the immediate front, and not on the other side of the street.

[Argued December 5th, 1883—decided February 8th, 1884.].

ACTION for an injury from falling upon ice on a sidewalk of the defendant city; brought to the District Court of Waterbury, and tried to the court on a general denial, before *Bradstreet, J.* The court made the following finding of facts.

The plaintiff was injured by slipping upon the ice upon the sidewalk on the east side of Bank street, in the city of Waterbury, soon after six o'clock in the evening of December 30th, 1880. The injury consisted of a bad fracture of the leg just above the ankle joint.

Bank street is one of the principal business streets in Waterbury, and the sidewalks on both sides of the street were generally in good condition at the time of the accident with the exception of the place where the accident occurred. The sidewalk at that place was in a dangerous condition at the time, by reason of smooth ice upon it for nearly the entire width of the walk, which rendered it very slippery and dangerous.

There was no structural defect in the walk, which was made of concrete, and is a hard and nearly level walk, from eight to ten feet in width, constructed with a little slope toward the street, but no more than is necessary to permit the water to flow off readily.

Bank street at that point is very nearly level. There were no ridges of snow or ice on the walk where the accident occurred, and its dangerous condition was owing entirely to its being covered with glare and smooth ice which had accumulated to the thickness of about one inch.

The sidewalk at this locality had been in this smooth, slippery and dangerous condition for a number of weeks prior to the accident, and at the time of the accident there was no sand or other substance upon the walk to make it more safe for travel, but it had been permitted by the

defendant to remain in this slippery and dangerous condition. Some sand was sprinkled upon the walk the day after the accident.

The weather was intensely cold at the time, the thermometer at its highest point on the day of the accident being only five degrees above zero, and ranging from five to twelve degrees below zero at the coldest part of the day.

There was a general condition of iciness throughout the city at the time of the accident. The weather had been cold for twelve days before, the thermometer having risen only one day during that period to four degrees above the freezing point, and in seven of the twelve days it had not risen as high as the freezing point during the day. Ice had formed fifteen inches thick before the 20th day of December.

Notwithstanding the general condition of iciness throughout the city at the time of the accident, with a little care and attention the walk in question could have been made safe for travel. The ice had been cleared off above and below the place of the accident by the adjoining proprietors, but at this point had negligently been suffered to remain.

The plaintiff did not know of the slippery condition of the walk. He came out of a dark alley-way near by, and while in the exercise of reasonable care fell after he had taken a step or two on the walk. The street and sidewalk were lighted at the time by lights shining from the store windows upon that side of Bank street.

No notice or complaint of the slippery and dangerous condition of the sidewalk had been made to any officer of the city or to the owner or occupants of the adjoining premises before the accident.

The plaintiff within sixty days after the accident gave proper legal notice of the same under the statute to the proper officer of the city. The notice was in writing as follows:—

"To Edward G. Kilduff, clerk of the city of Waterbury: You are hereby notified that on the 30th day of December, 1880, the subscriber hereto fell and was injured on the sidewalk or highway known and called Bank street, at a point

in said highway on the west side of said street in front of the property No. 117, occupied by Dennis Blakeslee, house painter, grainer and paper hanger, and owned by Bowditch & Co., of New Haven. The defect in said street consisted in this, to wit: in that snow and ice had accumulated on said walk and the same was then in a dangerous condition and had so remained for an unreasonable length of time. On said 30th day of December, 1880, at about half-past six o'clock in the evening, by means of said defect the subscriber fell and was greatly injured, in that his leg was broken at the ankle. He will claim damages for said injuries. Waterbury, February 16th.     JOHN CLOUGHESSEY."

No exception was taken to the notice upon the trial as being irregular or defective in any particular, or as not designating with sufficient accuracy the locality where the injury occurred.

The defendant claimed that upon the foregoing facts the plaintiff could not recover, inasmuch as the accident resulted from "mere slipperiness" of the sidewalk, without any structural defect in the walk, and with no ridges of snow or ice formed thereon, and that negligence could not be imputed to the city in permitting the walk to remain in a purely slippery condition. The court held otherwise, and found that upon the facts found the highway was defective within the meaning of the statute, and gave judgment for the plaintiff to recover $1300 damages and costs.

The defendant appealed to the Superior Court, assigning as grounds of appeal the non-liability of the defendant on the facts, and the legal insufficiency of the notice. The Superior Court reserved the case for the advice of this court.

*S. W. Kellogg* and *G. E. Terry*, for the appellant.

1. There is no common law liability for this class of injuries in this state; the only liability is created by statute, and there is under the statute no different liability in the case of sidewalks from that in the case of defective roads or bridges. When this statute was passed it was not intended that towns

should become insurers against accidents on their highways. It only imposed upon them the duty to keep their highways in a reasonably safe condition, considering all the circumstances. In *Burr* v. *Plymouth*, 48 Conn., 469, this court has said : " Undoubtedly towns are under some duty to the public in relation to keeping highways in travelling condition in the winter. But this court has said in *Congdon* v. *Norwich*, 37 Conn., 414, that it is conceded that in this rigorous climate the duties of towns, in respect to snow and ice, are, and must be, very limited. Mere slipperiness is not a defect within the meaning of the statute, when there is no structural defect, or an equivalent defect by means of the accumulation of snow or ice. We are aware that this court in the case of *Congdon* v. *Norwich*, (*supra*,) and *Dooley* v. *Meriden*, 44 Conn., 117, would, upon a casual reading, seem to almost deny this proposition ; still, we think, upon a closer investigation it will be seen that neither of them go so far as to decide the precise point here raised. In the first case the court finds that " there was no structural defect in the walk." But it further finds " that the ice and snow had accumulated upon the sidewalk to the depth of three or four inches in places, and had so formed as to cause the surface thereof to be irregular and uneven, but in places to be smooth and slippery." And in the latter case it is stated in the opinion that the walk " was covered the whole width with a solid coat of ice, varying from one to three inches in thickness, and of an uneven and irregular surface, but in some places smooth and slippery." And the finding in the record shows that " its uneven and irregular surface was caused in part by the trampling of passers-by, some four or five days prior to the accident, at which time the ice and snow was frozen solid." It will be perceived, therefore, that these cases differ from the case at bar ; that while there was no structural defect in the walk, still the surface had become uneven and irregular by reason of the accumulation of ice and snow thereon, which, for all purposes of travel at the time, constituted a defect equivalent to a structural defect, as contradistinguished from a mere level coating of smooth

ice. In the case at bar the finding is that "there was no structural defect in the walk, no ridges of ice or snow on the walk when the accident occurred, and its dangerous condition was owing entirely to its being covered with smooth ice, which had accumulated to the thickness of about one inch." The only case reported in this state, so far as we are aware, where the precise question of mere slipperiness, with no structural defect in the walk, no ridges, unevenness, or irregularities of ice or snow, was at issue, is *Landolt* v. *Norwich*, 37 Conn., 615, where the court holds that the defendant was not liable. Such are the uniform decisions in all the states having statutes like ours. *Stanton* v. *Springfield*, 12 Allen, 566; *Johnson* v. *Lowell*, id., 572; *Nason* v. *Boston*, 14 id., 508; *Stone* v. *Hubbardston*, 100 Mass., 49; *Gilbert* v. *Roxbury*, id., 185; *Spellman* v. *Chicopee*, 131 id., 443; *Cook* v. *Milwaukee*, 24 Wis., 270. The cases where cities have been held liable for injuries upon icy sidewalks, so far as we are able to find, are where the ice or snow had accumulated and formed a ridge upon the walk, or had made the surface of it uneven and irregular. The following besides our own cases of *Congdon* v. *Norwich* and *Dooley* v. *Meriden*, before referred to, are some of those cases: *Luther* v. *Worcester*, 97 Mass., 268; *Hutchins* v. *Boston*, id., 272; *McLaughlin* v. *Corry*, 77 Penn. St., 109; *Providence* v. *Clapp*, 17 How., 161.

2. The notice in this case was insufficient, in that it does not comply with the statute, in stating correctly the place where the accident occurred. Gen. Statutes, 232, § 10. But we are here met with the claim that no exception was taken to the notice upon the trial as being defective. We are aware of the rule of the court; but we claim the question was distinctly raised and at issue on the trial. The allegation in the complaint is that the accident occurred "on Bank street, on the east side thereof, * * of which the defendant had notice in the manner provided by law." This allegation was put in issue by the denial of the defendant. But without such denial it was necessary that notice in compliance with this statute should be given, as a condition precedent to enable the plaintiff to maintain his

action. *Hoyle* v. *Putnam*, 46 Conn., 56. The notice says the accident happened on the west side of Bank street; the allegation is, and the finding shows, that it in fact occurred on the east side. It is true that no exception was taken to its introduction in evidence, but the defendant waived nothing by such omission. It is a statutory provision which the city attorney could not waive. *Hoyle* v. *Putnam*, (*supra*); *Veazie* v. *Rockland*, 68 Maine, 511; *Gay* v. *Cambridge*, 128 Mass., 387; *Pratt* v. *Sherburne*, 53 Verm., 370. The defendant might have taken advantage of the defective notice by a motion in arrest of judgment. Surely he may now do so in a motion in error, for an error apparent on the record.

*J. O'Neil*, with whom was *M. Myers*, for the appellee.

1. The sidewalk in question was in a dangerous condition for public travel for several weeks prior to the accident. No sand or other substance had been sprinkled thereon. The sidewalks above and below were safe, and with a little care and attention this could have been made safe. And the question presented is, whether this was a defective highway within the meaning of our statute. We are aware that in Massachusetts the courts have held that mere slipperiness is not a defect, though we believe that some of the later opinions in that court can hardly be reconciled with this doctrine. However this may be in that state, our own courts, with the Massachusetts decisions before them, have repudiated this doctrine, as we understand the decisions. *Congdon* v. *Norwich*, 37 Conn., 414; *Landolt* v. *Norwich*, id., 615; *Dooley* v. *Meriden*, 44 id., 117; *Burr* v. *Plymouth*, 48 id., 460; *City of Hartford* v. *Talcott*, id., 525.

2. The court has found that due notice of the time and place of the injury was given to the proper officer of the city within sixty days, as required by law. The defendant in its assignment of errors contends that the notice is insufficient. Under the old practice this question could be raised only on a motion for a new trial, and to avail itself of this defect in such a motion it would have been necessary

to have taken an exception to the evidence on the trial, or to have called the matter to the attention of the court and asked for a special ruling on the point; but in this case the finding is that no exception was taken to the notice on the trial, nor was the court asked to rule on it in any particular. Besides this, the assignment of errors on this point is too indefinite. Wherein it is insufficient is not pointed out. The rules of practice are, that the error must be pointed out, and it has been said that it must be so assigned that you may lay your finger on it.

LOOMIS, J. The error assigned in this case requires us to draw the line very closely, limiting the duty and consequent liability of a city to the particular form which the ice on the sidewalk causing the injury is found to have assumed.

At first the contention before the courts was strong, that duty and liability must cease where structural defects ended. This objection was soon brushed away, and the liability of towns and cities was extended to other things having no connection with the structure of the road or walk, but which might obstruct or imperil the traveler.

Then it was contended that snow and ice, coming solely at the will of providence, must surely be beyond the purview of a town's duty relative to its removal, but it was soon generally conceded by the courts everywhere that towns and cities must be held to owe some duty even in regard to ice and snow upon the public streets and sidewalks, but it was insisted that the duty must be restricted to ice found in ridges upon the sidewalk and could not be extended to smooth and level ice however slippery. And here at the outset we concede that there is a strong array of authorities from different states sustaining this position, but they all follow and count upon the leading case in Massachusetts of *Stanton* v. *Springfield*, 12 Allen, 566, to which we will again refer.

Leaving out of view for the time being as far as practicable the bias of mind produced by the fact that the courts of other jurisdictions sustain the distinction, let us inquire into

the substantial reasons that it rests upon. In the first place, it is obvious that it does not depend at all upon the fact that ice in ridges is dangerous, while smooth ice is not. This of course is a question of fact, and should be found as such to make it an element of the legal proposition, but, appealing to common knowledge and experience, we think it may be assumed that no such fact could be proved to sustain the distinction, but on the contrary that it might be shown that the smooth and glare ice would be the more dangerous. And in this connection the finding in *Stanton* v. *Springfield,* (*supra,*) is significant. In that case there was both rough and uneven ice and also places where the ice was entirely smooth. The plaintiff passed safely over the rough and uneven ice, but, to use the language of the finding, " fell as she stepped on the smooth ice, which was so slippery that her feet came out from under her the moment she touched it." It seems then that the city escaped liability because the plaintiff happened to fall where the walk was in fact most dangerous. A fall only one step further back would have made it liable. At first blush this seems a little absurd; nevertheless, if the line of responsibility was properly drawn the court faithfully applied the principle, for it would be immaterial how near the plaintiff came to the line if she was really beyond it. So we will return again to consider the reasons on which such a distinction must be based. But the fact that the distinction ignores as a defect that form of ice which may be the most dangerous, remains an objection not easily to be overcome.

It may plausibly be suggested that the ice to constitute a defect must, while adhering to the walk, assume a form which would be a structural defect, if the walk itself was so constructed. If this is correct then mere smoothness of surface could never be a defect, and a sidewalk, though made for the express purpose of enabling travelers on foot to pass safely thereon, might be made of glass or some material so slippery as to defeat the purpose of making it by rendering it impossible for the traveler to pass over it in safety, and yet the law could not regard the walk as defec-

tive. The very statement sufficiently exposes its absurdity, but it has been virtually repudiated in Massachusetts in the case of *Cromarty* v. *Boston*, 127 Mass., 329. In this case the plaintiff offered to show that a cover made in part of glass and partly of iron formed a portion of the sidewalk, and had been so changed by wear as to be smooth and slippery, that the plaintiff stepped on it, and slipped wholly by reason of its smoothness, and fell and was hurt. The defendant contended that inasmuch as the general surface of the walk was level, and the cover was level with the rest of the walk, there was no evidence of a defect. The court, SOULE, J., giving the opinion, say: " This position cannot be maintained. * * If a walk is constructed of material so smooth and hard that travelers shod in the ordinary way are defeated or obstructed in their attempts to pass over it by inability to get the hold upon it with their feet which is necessary to their walking forward or the want of which causes them to lose their balance and fall, such walk cannot be said as matter of law to be safe and convenient. And if in a sidewalk the chief part of which is in a proper condition for travel, a small part of the surface is constructed of material different from the remainder and so smooth and slippery that a foot traveler stepping suddenly upon it from the portion otherwise constructed, necessarily or probably slips and is likely to fall, it cannot be said as matter of law that such walk is not defective."

But it may be more satisfactory to examine the reasons actually given by the court for its decision in the leading case of *Stanton* v. *Springfield*, (*supra*.) It was there held that the mere fact that a highway is slippery from ice upon it, so that a person may be liable to slip and fall upon it while using ordinary care, if the way is properly constructed, and there is no such accumulation of ice and snow as to constitute an obstruction, and nothing in the construction or shape of the way which occasions any special liability to the formation or accumulation of ice upon it, it is not a defect or want of repair which will authorize a jury to find that it is not safe or convenient for travelers within the.

meaning of the statute. HOAR, J., in giving the reasons, said: "If a city was made liable for this cause it would have to be extended also to country roads, and the same rule would apply to pavements or roads made slippery for horses by snow or ice or even by rain. * * It could never have been intended by the legislature to impose upon towns and cities of the commonwealth a responsibility so extensive, or that the phrase 'safe and convenient for travelers' should receive such an interpretation. It would require of all towns an examination of all their roads so incessant and minute, and the application of an efficient remedy would be so laborious and expensive, that it would be manifestly unreasonable to require or expect it. The freezing mist of a single night may glare over the whole territory of a town. The formation of thin but slippery ice in our climate is an effect which may be so sudden and extensive, and which may continue or be renewed for such a length of time, that it would be extremely difficult if not impossible for towns to make adequate provision against it."

Notwithstanding this powerful presentation of objections we think the principles heretofore accepted by this court will render the reasoning inapplicable in this state, so far as the case at bar is concerned.

It is contended that if a city is held liable, the same liability must be extended to country towns and country roads. In this state however we have made a marked distinction between cities and towns as to ice and snow. In *Landolt* v. *City of Norwich*, 37 Conn., 615, SEYMOUR, J., alluding to this point, says: "The peril is not such as to warrant the great expense in a sparsely inhabited village of attempting a preventive or a remedy; but in cities the aggregate of peril by reason of the numbers exposed to it becomes considerable and the means of meeting the needful expense are ample; and hence in cities the public as such properly undertake the duty of doing the best they can to provide against the dangers to travel which winter in this climate necessarily brings. Well cleaned pavements are justly felt to be convenient and necessary." The under-

lying principle is one and the same, namely, that the care to be exercised by the municipality is a reasonable one, which must take into view all the circumstances, but the result is that the standard of diligence and duty is not necessarily the same in cities as in sparsely settled towns.

Neither can we accept the reasoning that whatever a city must do relative to ice on a sidewalk it must also be required to do with reference to ice in the carriage way. We had supposed the principle obtained everywhere, that all parts of all highways need not be kept in like repair and alike smooth and free from obstructions, and that reference may always be had to the character of the way and the kind and amount of travel over it. *Street* v. *Holyoke*, 105 Mass., 85; *Kingsbury* v. *Dedham*, 13 Allen, 186. No person of ordinary prudence would think of driving his horse smooth-shod through the streets in the season when ice might reasonably be expected to be found, and a city or town may reasonably be exempted from the duty of anticipating and providing against the consequences of such imprudence.

The remaining objections are all founded on the assumption that if a city should be made responsible under any circumstances for smooth ice on its sidewalks, it must logically and of necessity be responsible under all circumstances, as well for "the freezing mist of a single night" which glares its entire territory, as for a patch of ice of a few feet only in extent which had existed in the same condition for weeks. That such a conclusion is illegitimate we think might be demonstrated by reference to principles generally accepted, but it suffices to say that our courts have already decided adversely to this position.

In *Congdon* v. *City of Norwich*, 37 Conn., 419, SEYMOUR, J., in giving the opinion of the court, says:—" When an ice storm covers the entire surface of the earth with ice the public authorities cannot be expected to scatter sand and ashes upon all places of public travel within their limits, * * but it has become familiar law in Connecticut that some duty in regard to snow and ice devolves upon cities and towns. Accumulation of snow and ice may produce

such a condition of the road as to cause it to be dangerous and defective, and in each particular case of alleged defect from such cause the question will depend upon an inquiry of fact, whether under all the circumstances of the case the road was in a reasonably safe condition, and whether those who were bound to keep the road in repair are justly chargeable with negligence and want of reasonable care in relation to it."

If the Massachusetts court could have accepted the distinction above mentioned it is obvious the reasoning referred to would lose all its force. The argument of the learned court may be summarized thus: — If a city is liable in respect to any smooth ice it is liable for all, and if liable for all it is a burden too heavy to be borne; there is practically no power to perform it, and where there is no power to do there is no duty to be done. We hold on the contrary that if ice is found on the sidewalks to a limited extent, *in a dangerous condition*, whether smooth or otherwise, and the city has ample notice of the fact and can with reasonable expenditure make the passage safe for travel, it ought to do it, and is responsible for the consequences if the duty is neglected. But if a sudden ice storm covers all the territory of a town it would be impracticable to apply the remedy, and it would be considered and treated as would an extraordinary inundation of its streets by a flood.

But it may be suggested that we overlook the logic of the Massachusetts court, which is that to make a city liable the street must be found *defective*, and if a small amount of ice existing for a long time is a defect so is a large amount coming however suddenly. But it should be borne in mind that the existence of a defect in the street is but one fact among several, all of which are indispensable to impose a liability for an injury caused by such defect upon the city. The latter must be found guilty of some negligence or want of reasonable care in regard to the matter. A defect may exist and yet the city or town may not be liable for the injury occasioned by it. To determine this question all the circumstances must be considered. The decision of the case

at bar must be understood to refer only to the particular circumstances found by the court, namely, that the place of injury was on one of the principal business streets of the city—that the sidewalks on both sides of that street were in good condition except at the precise place of the accident, which was very dangerous by reason of glare, smooth ice—that it had been in this same condition for a number of weeks prior to the accident and that no sand or other substance had been put upon the ice to make it more safe, as might easily have been done, but it had been permitted by the defendant during all this time to remain in the same slippery and dangerous condition—and that the plaintiff while in the exercise of ordinary care slipped and fell upon the ice and was thereby injured.

Our decision is that under such circumstances we cannot say that the court below erred in finding the defendant liable; and this decision we regard as in harmony with all previous decisions by this court and as logically required by the principles heretofore accepted by the court.

In *Dooley* v. *City of Meriden*, 44 Conn., 117, FOSTER, J., giving the opinion, after stating the facts, says:—"However the law may be elsewhere as to the liability of cities and boroughs for injuries sustained on account of ice found on sidewalks in their respective limits, we must regard the principles recently enunciated by this court in the case of *Congdon* v. *City of Norwich*, 37 Conn., 414, as establishing the law of Connecticut and decisive of this case. The law as laid down in *Landolt* v. *City of Norwich*, 37 Conn., 615, decided by the Superior Court, is also applicable to this case."

After these decisions the law of this state as to a town's responsibility for ice upon its sidewalks was generally accepted by the courts and by the profession as settled and as different from the law of Massachusetts.

In *City of Hartford* v. *Talcott*, 48 Conn., 532, PARDEE, J., giving the opinion of the court, said:—"Where ice has accumulated upon the sidewalk to a dangerous extent it is the duty of the municipality to remove or cover it within a reasonable time after its formation."

But the counsel for the defendant in the case at bar, look-ing critically into the facts in *Dooley* v. *City of Meriden*, and *Congdon* v. *City of Norwich*, discover that the ice in these cases was described as uneven, and therefore insist that the decisions are to be regarded as based on that fact, and so they would make the rule in this state identical with that of Massachusetts. But such is not a true interpretation of those decisions. In both the cases the ice is described as of uneven surface but in some places smooth and slippery, and in neither case is it found whether the plaintiff fell upon the smooth ice or the uneven ice. Upon the Massachusetts dis-tinction it would have been indispensable to the validity of the judgments rendered in both cases for the plaintiffs that it should appear as a fact that the injury was caused by the uneven ice. This court evidently treated that distinction as immaterial, and relied upon the controlling fact that the ice was slippery and dangerous, and had so remained for a con-siderable time in both cases, and that no sand, ashes or other substance had been placed on the walk to render it less dangerous. In *Dooley* v. *City of Meriden*, it will be observed that the counsel for the plaintiff in error sought to reverse the judgment obtained in the court below against the city, upon the authority of the same citations from the decisions of other states that the present defendant relies upon, but they did not prevail with the court, and in *Congdon* v. *City of Norwich* it appears that the defendant, citing the Massa-chusetts authorities, claimed specifically, both in the court below and in this court, that there was no defect in the highway, and that in order to make the city liable there must be such a *formation* of ice and snow as to make an obstacle to travel and that mere slipperiness of the ice was not sufficient. The court below overruled this claim, found the highway defective, and rendered judgment for the plaintiff, and this court sustained the decision upon the ground that it could not say as matter of law that the facts found did not warrant the conclusion to which the court came. A critical examination of these cases we think will clearly show that this court did not accept the distinction

that obtains in Massachusetts and other states between uneven and smooth ice, nor look upon it with favor.

Before leaving this branch of the case we may remark that the later decisions in Massachusetts evince a tendency to modify somewhat the doctrine as first announced, and mere smoothness of the ice is now recognized as an element of defect when combined with unevenness. In *Hutchins* v. *City of Boston*, 97 Mass., 272, the ice had become uneven and rounded so as to present a narrow surface three or four inches higher in the centre of the walk than at the sides. The court below held that this was no evidence of a defect, but the Supreme Court gave a new trial upon the ground that the evidence should have been submitted to the jury, with instructions that the city could be held liable only in case the jury should find that, in addition to the smooth and slippery condition of the ice, it was allowed to be in such an uneven and rounded condition on the surface that a person could not walk over it, using due care, without being in danger of falling. And in *Morse* v. *City of Boston*, 109 Mass., 446, the plaintiff testified that it was purely the slipperiness of the ice and nothing else which made her fall, and that she did not stumble, but she also testified, as did other witnesses, that the ice was glare, hard, hubby and in ridges, uneven in form but very smooth. The court, CHAPMAN, C. J., giving the opinion, said that the jury were authorized to find that the hubby surface of the ice made its mere slipperiness more dangerous, and the evidence authorized the jury to find the highway defective.

In 2 Thompson on Negligence, p. 785, the author, after summarizing the doctrine of the authorities relied upon by the defendant, says:—"This doctrine manifestly should be taken with some qualification;" and in the notes on the same page he commends the reasoning of SEYMOUR, J., in *Landolt* v. *City of Norwich*, as excellent, and also highly compliments the charge of DRUMMOND, J., to the jury as given in *Clark* v. *Chicago*, 4 Bissell, 486, which will be found to contain a statement of principles similar to those that have obtained in this jurisdiction.

The remaining question is whether the notice of the injury as to the place where it happened was sufficiently certain.

The notice stated that the plaintiff was injured on the sidewalk " in Bank street, at a point on the west side of the street, in front of the property No. 117, occupied by Dennis Blakeslee, house-painter, grainer and paper-hanger, and owned by Bowditch & Co. of New Haven." The alleged uncertainty arises from the fact that the court finds that the injury was received on the east side of the street. If there was nothing more certain to fix the locality than the statement that it was on the west side, while in fact it was the east side, it would doubtless be insufficient. But we have further words of precise identification of the place, namely, " on the sidewalk in front of No. 117, occupied by Dennis Blakeslee." Now as no question is made as to the correctness of this part of the description, we may well assume it was on the east side of the street. We have then a very perfect description and designation, of the place which is true, and a word superadded of further description inconsistent with it and which is not true, which furnishes a perfect foundation for the application of the maxim "*falsa demonstratio non nocet, cum de corpore constat.*" We reject the false and find a perfect description remaining.

If it should be objected that the court has not found the remaining words true, then we say that justice would demand the application of the rule that no claim can be considered in this court unless it is founded upon a like claim appearing of record to have been made in the court below. In this case the finding is that no exception whatever was taken to the notice upon the trial. Had there been objection the place of the accident with reference to No. 117 would have been found.

It may be further suggested that there is an ambiguity in the phrase ".in front of the property No. 117," whether it means in the immediate front or across the street. If so, we should still think the rule above mentioned ought to be applied, but taking all the words in connection, " on the sidewalk," &c., " in front of," &c., means in the *immediate* front.

We advise the Superior Court that there was no error in the judgment of the District Court.

In this opinion the other judges concurred.