## Maude D. Carl *vs.* The City of New Haven.

Third Judicial District, New Haven, June Term, 1919.

Prentice, C. J., Roraback, Wheeler, Beach and Gager, Js.

A municipality in this State is under no obligation to make its streets and sidewalks absolutely safe with respect to snow and ice thereon, and much less to make them safe in any event. All that the law requires is the exercise of such efforts and the employment of such measures—directed to the end of maintaining a reasonably safe condition—as, in view of all the constantly changing circumstances and conditions likely to occur, are in themselves reasonable.

Among the many circumstances to be taken into account, and considerations to be weighed, in determining what is reasonable to be done in attaining this reasonable condition of safety, are the location, extent and character of the use made of the street or walk, the practicability and efficiency of possible remedial measures, the size of the problem facing the municipality in the existing emergency, the expenditure involved in dealing with that problem in the several possible ways, the physical resources at the municipality's command which it can utilize,—and other matters of like nature.

Notice to a city, through the observation of one of its policemen, of conditions which in the natural course of events are likely to produce an icy condition upon a sidewalk, is not the equivalent of notice of an existing icy condition, knowledge of which, actual or implied, is essential to create liability upon the part of the municipality for personal injuries from a fall upon such walk.

The charge in the present case reviewed and *held* to have imposed too high a standard of duty upon the city under the situation developed by the evidence.

Argued June 3d—decided July 16th, 1919.

␣ ACTION to recover damages for personal injuries from a fall upon an icy sidewalk which the defendant was alleged to have negligently left in a slippery and defective condition, brought to the Superior Court in New Haven County and tried to the jury before *Haines, J.;* verdict and judgment for the plaintiff for $1,725, and appeal by the defendant. *Error and new trial ordered.*

About eight o'clock in the evening of February 15th, 1917, the plaintiff sustained personal injuries as the result of a fall upon a sidewalk on Winter Street, a public highway in New Haven. It was testified and not disputed that the walk at the time and place of the fall was coated with ice which was itself covered with snow recently fallen. The uncontested evidence was that the walk at this point was upon a lower level than that of the adjacent land outside of the highway, that this land, as was the surface of the earth generally, was covered with snow which had lain there for a considerable period of time, and that by reason of the contour of the land, water formed from melting snow thereon was accustomed to flow down and upon the walk. The testimony of the United States weather observer, uncontradicted, was to the effect that for six days prior to and including the 15th, the temperature had been low; that on the 10th to the 13th inclusive it had at no time risen higher than 23° above zero; that on the 14th it rose to the maximum of 33° with a minimum of 18°, with a maximum of 32° and a minimum of 20° on the 15th; and that during all that time there was little melting save in favored spots where there was exposure to the sun's rays. He further testified, without contradiction, that a little snow fell during the night of the 13th, and that another snow fall commenced at ·6:05 in the evening of the 15th and continued until 10:25 o'clock.

Carl *v.* New Haven.

The city offered testimony by the mouth of several witnesses, that on the 15th there was neither ice nor snow upon the walk at the place of accident until well along in the afternoon at least, but that there was, during the middle of the day, water from the melting of snow on the adjacent private property trickling down upon and across the walk.  Among the witnesses so testifying was a police officer of the city who, in the performance of his duties, passed over the walk about two o'clock in the afternoon of that day.

This testimony concerning the condition of the walk in the afternoon of the 15th was contradicted by witnesses for the plaintiff, who testified that for several days immediately preceding the plaintiff's fall there was upon the walk ice, variously described but substantial in quantity.

*William L. Bennett* and *Thomas R. Robinson,* for the appellant (defendant).

*Carl A. Mears* and *Bertram Weil,* for the appellee (plaintiff).

PRENTICE, C. J.  The reasons of appeal select for criticism and complaint four passages contained in the court's charge to the jury.  The burden of the complaint made in each instance, save one, is essentially the same, to wit, that the standard of duty imposed upon the city, under circumstances like those presented by the evidence, was too high.

It has long been recognized in this State, as elsewhere, that some duty rested upon cities and towns in respect to snow and ice upon highways.  The courts of different States have, however, not been in full accord as to the extent and measure of it.  Since the illuminating opinion in *Cloughessy* v. *Waterbury,* 51

Conn. 405, following *Congdon* v. *Norwich* and *Landolt* v. *Norwich*, both in the 37th Connecticut at pages 414 and 615 respectively, little uncertainty has remained as to the rule of duty in this State. That rule is one which recognizes, on the one hand, the demands of public convenience and safety, and on the other, the difficulties, both financial and physical, which our climatic conditions present, and represents a fair and practicable compromise between a very restricted duty under any and all conditions, and a more comprehensive duty clearly defined and arbitrary in its application under all conditions and circumstances.

The cases to which we have alluded, and others subsequent thereto, make it clear, first of all, that our municipalities, as regards conditions produced by fallen snow or formed ice upon streets and walks, are under no obligation to make them absolutely safe, and much less to make them safe under all circumstances. What the law requires of them, and all that it requires, is the exercise of such efforts and the employment of such measures—directed to the end that their streets and walks be maintained in a reasonably safe condition, all the circumstances of the situation considered—as, in view of the circumstances and conditions, are in themselves reasonable. The circumstances to be taken into account, and the considerations to be weighed, in determining what is reasonable to be done, and what is a reasonable condition to be sought after and attained, if reasonably attainable, are many. Their variety is vastly greater and their relation to the decision far more interrelated and complex than in the case of structural defects. They involve, as prominent elements in the decision, the location, extent and character of the use made of the street or walk, the practicability and efficiency of possible remedial measures, the size of the problem which the municipality is called upon

to face in the existing emergency, the expenditure involved in dealing with that problem in the several possible ways, the physical resources that the municipality has at command which it can utilize to deal with it, and so forth and so forth. It follows naturally and necessarily from the variety of the elements which may exist in different situations as they arise, that our courts have never undertaken to lay down a rule defining with particularity and precision the duty owed by our towns, cities and boroughs in their dealings with the manifold problems which, in our climate, are presented by formed ice or fallen snow upon public highways or walks. They have realized, and frequently expressed, the impossibility of framing one of universal application in other than general language which is elastic in that it embodies the qualification of reasonableness under all the circumstances at every turn of the definition. The accepted general rule looks constantly to the ever changing circumstances of situations, and its key-note throughout is reasonableness in view of the circumstances as they appear upon each occasion. *Landolt, v. Norwich,* 37 Conn. 615; *Cloughessy v. Waterbury,* 51 Conn. 405, 417.

The required efforts in the interest of safety are such only as reasonably might be expected to be exerted in view of all the many circumstances deserving of consideration, and the end sought for or attained need be only such as satisfies the test of reasonableness similarly applied. This saving feature of our rule, is too often overlooked, and statements of it, or of some aspect of it, are by no means infrequently made that omit the important qualifications of reasonableness at some point. Instances of such thoughtless omission may be found in our reports. It should be supplied in interpreting the language used, and the importance of it not be ignored. Otherwise our fair

and reasonable rule becomes converted into one with fixed and arbitrary standards, most unjust in its application to some of the widely varying situations which are constantly arising.

In the passage from the charge which is made the subject of criticism in the first assignment of error, the court came dangerously near to a disregard of this admonition, and might well, had it stood alone, have led the jury to understand that it was the city's duty to make its sidewalks safe, if it had notice that their condition was improper, and such a result could have been obtained by a reasonable expenditure for that purpose, regardless of similar conditions elsewhere; and, furthermore, that its negligent liability was fixed upon its receipt of notice, regardless of an allowance of time for it to take remedial action. The omission from the passage of any reference to the latter matter was quite possibly cured by statements elsewhere contained in the charge, and the lack of accurate statements in the other respects noted might not, when other portions of the charge are taken into account, be sufficient to justify a reversal of the judgment, were those matters the only ones that the appeal presents.

In the extract from the charge recited in the third reason of appeal, the court, referring to the testimony of a police officer of the city that about two o'clock on the afternoon of the 15th he, in the performance of his duties, passed over the walk in question, and observed that while it was then free from ice and snow there was water trickling down upon it from melting snow on the adjacent property, spoke as follows: "Obviously he observed the conditions at two o'clock. He says that water was running across the sidewalk. You are entitled to take that into account and to consider how far that put him and the city upon notice

of an existing condition which either was or might be dangerous. This, of course, was the winter season and the temperatures were low. From all these facts it will be for you to determine whether or not this officer, exercising the judgment of a reasonably prudent man, was practically notified of this condition or whether he was not; whether it would be unreasonable to require him to note that water was running across the walk at this point when the air was at a low temperature and liable to freeze in the evening."

The jury were thus told, in effect, that knowledge of the existence of the conditions of water and weather, calculated in the natural course of events to produce an icy condition of the walk, was the equivalent of notice of an existing icy condition, in so far as the creation of the city's duty of resorting to remedial measures, and the marking of the time of the origin of that duty, which, unperformed within a reasonable time thereafter, would result in negligent liability for injuries received, were concerned. Such is not the law governing that subject. The notice, actual or implied, of a highway defect causing injuries which a municipality must receive as a condition precedent of liability for those injuries, is notice of the defect itself which occasioned the injury, and not merely of conditions naturally productive of that defect and subsequently in fact producing it. "Notice of another defect, or of the existence of a cause likely to produce the defect, is not sufficient." *Smyth* v. *Bangor*, 72 Me. 249, 252; *Pendleton* v. *Northport*, 80 Me. 598, 600, 16 Atl. 253; *Ryerson* v. *Abington*, 102 Mass. 526, 532. Were it otherwise, and municipalities were charged with notice of defects which the future should develop upon the strength alone of their knowledge of such conditions as were calculated to produce them, the expansion of municipality liability for highway defects would be enor-

mous, the burden of repair and remedy cast upon them be vastly enlarged, and a wide field of uncertainty opened up in which triers might wander comparatively unrestrained in speculations as to causes and anticipated results.

As the court had immediately preceded this erroneous instruction last noticed with the statement, in effect, that the city would be charged with notice of such facts as the police officer observed, which included, according to his testimony, the water flowing across the walk, its distinctly harmful character is apparent.

The court's instruction above referred to concerning the observations of the officer and the imputation of knowledge thereby gained by him to the city, is made the subject of objection in the second reason of appeal, in that it embodied an incorrect statement of a concession by the city, of a fact said to have been conceded, and of a harmful legal conclusion drawn therefrom as to the imputation to the city of the knowledge gained by the officer. This objection appears to be well-founded; but our conclusions, drawn as a result of our consideration of the third reason of appeal, render the further pursuit of the assigned errors unnecessary.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.