# JAMES MAGAHA vs. THE MAYOR and COUNCIL OF HAGERSTOWN.

*Injury to Pedestrian Crossing a City Street—When a Municipal Corporation is Liable for an Injury Caused by Ice Which it has Allowed to Accumulate in a Street—Contributory Negligence.*

Pedestrians have the right to cross the streets of a city at any point and are not confined to the established crossings; and one who in crossing a street is injured by some defect in the highway of which he had no notice is not guilty of contributory negligence merely because he did not use a fixed crossing place.

A municipal corporation is not liable for an injury caused to a person who slips and falls upon ice accumulated in the streets in consequence of rain or snow, unless there are other circumstances to show neglect of the municipality's duty to keep the streets in a reasonably safe condition for travel.

A drain pipe from a house emptied water into the gutter of a street which was under the control of the defendant, a municipal corporation having the power and being under the obligation to keep its streets reasonably safe for travel and to abate nuisances. The water flowing from this drain into the gutter froze early in December and formed a sheet of ice in the roadbed, six inches thick, extending sixty feet in length and four or five feet wide, and so remained throughout the winter. The Mayor and other officials of the city were directly notified of this condition, which had also existed in previous years. In the early morning of a January day, when it was still dark, plaintiff, who was walking along the sidewalk of this street, was called by a friend to the opposite side, and started across, not at a fixed crossing place, when, while using due care and in ignorance of the existence of the above mentioned sheet of ice, he slipped and fell upon it, sustaining injuries to recover damages for which this action was brought. *Held,*

1st. That there was sufficient evidence of defendant's negligence to be submitted to the jury, and it makes no difference whether the ice was smooth or was in ridges and mounds.

2nd. That it was for the jury to determine whether the ice was formed from water emptied out of the drain or from causes over which the defendant had no control, and whether the defendant had actual or constructive notice of the condition of the street and sufficient time had elapsed to enable the defendant to protect the public from the danger.

3rd. That instructions to the jury are erroneous which do not require them to find whether the ice was formed from water allowed to flow into the

street or merely as the result of cold weather following snow or rain, and which refer to the condition of the sidewalk at a place where the injury did not happen.

4th. That a prayer is also erroneons which instructs the jury that it is the duty of the defendant to keep its streets, from sidewalk to sidewalk, in such condition that persons may be able to cross with a reasonable degree of safety at any and all times.

Appeal from the Circuit Court for Washington County (STAKE J.)

*Plaintiff's 1st Prayer.*—If the jury find that ice had accumulated in large quantities in the public footway, gutter and street on the south side of West Washington street between High and Foundry streets, in the city of Hagerstown, covering portions of said street and gutter in such a manner, as greatly to obstruct, inconvenience and endanger the public in walking across said West Washington street and along the said sidewalk, and if the jury further find that the said obstruction could have been removed, or the danger and inconvenience therefrom remedied by the use of proper care and diligence on the part of the defendant, or its proper agents appointed for that purpose; and if the jury further find from the evidence that the defendant and its proper agents, aforesaid, had notice, or might by care and diligence have obtained notice, of such obstruction by ice, as aforesaid, a sufficient time to have removed the same before the occurrence of the injury complained of, then it was the duty of the said defendant or its agents, to have removed the said obstruction in a reasonable time after notice thereof, or after they might have obtained notice thereof, by the use of ordinary care and diligence; and if the jury further find that the plaintiff while exercising ordinary care and diligence on his part received the injury complained of by falling on said obstruction by ice and that such injury occurred after the lapse of a sufficient time for the notice of such obstruction to the defendant, or its said agents, or from the period when the defendant or its agents might have obtained notice thereof, by the exercise of ordinary care and diligence, then the plaintiff is entitled to recover such damages by reason of

his injury as the jury may think he has sustained under the circumstances. (*Rejected.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alex. R. Hagner*, for the appellant.

The evidence clearly shows that the sheet of ice on which appellant fell was a nuisance and an obstruction dangerous to travel. If the appellee had actual notice or the defect existed a sufficient length of time before the accident for it to have abated the nuisance it was guilty of negligence and plaintiff can recover if he was using care and caution in crossing street. *City of Henderson* v. *White*, 49 S. W. R. 764; *Bultimore* v. *Marriott*, 9 Md. 160; *Waltermyer* v. *Kansas City*, 71 Mo. App. 354. There was a special cause for this ice at this spot against which city could have guarded. *Hall* v. *Lowell*, 10 Cush. 260; *Stanton* v. *Springfield*, 12 Allen, 270. The appellee demurred to the *narr* and Court overruled the same properly. City bound to keep its streets, etc., in a reasonably safe condition for travel. *Baltimore, etc.,* v. *Marriott*, 9 Md. 160; *Raymond* v. *City of Lowell*, 6 Cush. 530; *Bishop on Non-Contract Law*, sec. 1015.

Plaintiff had a right to cross street at any point, whether at a crossing or not, but in this case there were no cross-walks except 400 feet west and three blocks east of place of accident. *Bishop on Non-Contract Law*, sec. 1015; *Stringer* v. *Frost*, 2 L. R. A., 614; *Moebus* v. *Hermann*, 108 N. Y. 352; *Shea* v. *Reems*, 36 La. Ann. 966; *Raymond* v. *City of Lowell*, 6 Cush. 530; *City of Dallas* v. *Webb*, 54 S. W. R. 400; *Fort Worth* v. *Johnson*, 19 S. W. R. 362, *Pettingill* v. *Yonkers*, 22 N. E. R. 1096; *Bell* v. *Incorporated Town of Clarion*, 84 N. W. R. 964; *Durbin* v. *Village of Napoleon*, 21 Ohio Cir. Ct. R. 160; *Higgins* v. *Brooklyn*, 54 App. Div. 69; *O'Hara* v. *City of Brooklyn*, 57 App. Div. 176; *City of Junction City* v. *Blades*, 52 Pac. 444; *Beach on Contributory Negligence*, 2nd ed., sec. 251; *Simons* v. *Gaynor*, 89 Ind. 165; *Collins* v. *Dodge*, 37 Minn.

503; *Brusso* v. *Buffalo*, 90 N. Y. 679; *Lincoln* v. *Detroit*, 101 Mich. 245; *Mayor, etc., of Hagerstown* v. *Max Klotz*, 93 Md. 437; *Baker* v. *Grand Rapids*, 111 Mich. 447; *Denver* v. *Sharrets*, 88 Fed. R. 235; *Elliott on Roads and Streets*, 622; *Thompson on Negligence*, 949; *Baltimore Traction Co.* v. *Helms*, 84 Md. 515.

One who leaves sidewalk and takes to roadway and is injured by coming in contact with an obstruction the question whether negligent or not must be left to jury. *Gerald* v. *Boston*, 108 Mass. 584; *Hall* v. *Lowell*, 10 Cush. 260; *Beach on Contributory Neg.*, 2nd ed. 275; *Plummer* v. *City of Milan*, 79 Mo. App. 439; *Durbin* v. *Village of Napoleon*, 21 Ohio Cir. Ct. R. 160; *Walker* v. *Decatur*, 25 N. W. R. 256; *Lowell* v. *Watertown*, 25 N. W. R. 517. *Twogood* v. *New York*, 102 N. Y. 216; *Hall* v. *Mauson City*, 34 L. R. A. 209; *County Commissioners of Prince George's County* v. *Burgess*, 61 Md. 29; *Baltimore, etc.*, v. *Holmes*, 39 Md. 247; *Evans* v. *Utica*, 69 N. Y. 166. Streets from sidewalk to sidewalk should be kept in such a condition that foot passengers may be able to cross with a reasonable degree of safety, using care and caution at any and all times. *Dallas* v. *Webb*, 54 S. W. R. 400; *Jones on Neg. Mun. Corp.*, sec. 77; *Seward* v. *Wilmington*, 42 Atl. R. 452.

*J. Augustine Mason*, for the appellee.

It was in mid-winter that this accident occurred, a time of the year when every reasonably prudent person well knows that ice is formed and is to be found in gutters and along the edges thereof, both from natural and permissible artificial causes. The weather, according to the appellant's testimony, had been quite cold and freezing for about two weeks before Christmas and continued so until the day of the accident, and he knew it. He professedly had perfect familiarity with the north side of the street as he had been in the habit of using it and regarded it as the "better side." He was but a short distance from Firey's corner at Foundry street, the usual and established place of crossing, and the one "he always used." And

yet before daybreak on "a very dark and cloudy morning," knowing the condition of the weather aforesaid, simply because an acquaintance asks him "if it is he," he abandons what he considered the better side of the sidewalk, does not avail himself of the usual place of crossing, the one he had always theretofore used ; but starts off in the dark to cross the roadbed at a place unfamiliar to him. He had no occasion or necessity for so doing. And whilst he says he was a "very good walker and always walked strong and firm and was as careful as he ever was in his life," he does not pretend that he used any more care in his walking in the darkness across the roadbed at this unfamiliar place, or was more circumspect than if he had been upon the sidewalk, or even what he termed "the better side thereof." He gave no attention to the condition of the roadbed. It is insisted that when he voluntarily and for his own pleasure left the sidewalk and attempted to cross the gutters and the roadbed at a place other than an established and customary crossing, the law required him to take care and see what the actual condition thereof was. *Raymond* v. *City of Lowell*, 6 Cush. 524; *Alline* v. *City of Le Mars*, 71 Iowa, 654; *O'Laughlin* v. *Dubuque*, 42 Iowa, 539; *City of Dayton* v. *Taylor's Adm'tx.*, 56 N. E. R. 486; *Oliver* v. *City of Denver*, 57 Pac. R. 729; *Claney* v. *Kalamazoo*, 83 N. W. R. 618; *Barker* v. *Savage*, 45 N. Y. 191; *McLaury* v. *McCreger*, 54 Iowa, 717; *Church* v. *Howard City*, 111 Mich. 298; 68 Am. St. Rep. 396.

The plaintiff's testimony is that "My left foot flew from under me and I fell. As soon as I struck the ice my feet slipped from under me." Thus it is plain that the accident happened because of the smooth surface of the ice. "He fell because he slipped and he slipped because of the ice." In many jurisdictions the mere slipperiness of the ice even though upon the sidewalk is not an actionable defect. And this is so whether the ice was formed by water from natural or artificial causes. *Chamberlain* v. *Oshkosh*, 84 Wis. 289, 19 L. R. A. 513; *Mueller* v. *Milwaukee*, 86 N. W. R. 162; *Heyer* v. *City of Janesville*, 101 Wis. 371; *Henkes* v. *Minne-*

*apolis,* 42 Minn. 530; *Gavett* v. *City of Jackson,* 32 L. R. A. 861; *Lynchburg* v. *Wallace,* 95 Va. 640; *Broburg* v. *Des Moines,* 63 Iowa, 523; *Mauch Chunk* v. *Kline,* 100 Pa. St. 119 45 Am. Rep. 364; *Billings* v. *Worcester,* 102 Mass. 329; *Taylor* v. *City of Yonkers,* 105 N. Y. 202. The facts in the present case and those in *Mueller* v. *Milwaukee* and *Gavett* v. *City of Jackson* are very similar.

BOYD, J., delivered the opinion of the Court.

The appellant sued the appellee for damages sustained by him on account of its alleged negligence in permitting the accumulation of ice on Washington street, in the city of Hagerstown, upon which he slipped and fell, causing a fracture of his thigh bone and other injuries. At the conclusion of the testimony, the Court rejected five prayers, offered by the plaintiff and granted one, at the instance of the defendant, that "The jury are instructed that the plaintiff has offered no evidence legally sufficient to entitle him to recover, and the verdict of the jury must be for the defendant." A judgment was entered for the defendant on the verdict so rendered, and this appeal was taken from the rulings of the Court, in rejecting the plaintiff's prayers and granting that of the defendant. About five o'clock in the morning of the fourth of January, 1901, the plaintiff was going along the north side of Washington street to his place of business when a friend on the opposite side of the street called to him and he started in a diagonal direction across the street to see him. When he got within five or six feet of the curb he slipped on the ice and fell, his hip striking the curb. The evidence on the part of the plaintiff was to the effect that there was a terra cotta pipe running under the pavement from a saloon which emptied into a gutter, which is from two to two and a-half feet wide, and about three inches deep in the centre. The plaintiff fell at a point about sixty feet from where the pipe emptied. John M. Stahl, who lived next to the saloon, said the ice extended from the railroad, below where the plaintiff fell, to the pipe, was six inches thick in some places and extended into the street four or five feet; that

it was there during the month of December and early part of January.   He also said he told the Mayor and Chief of Police about it.   Other witnesses testified to the same effect as to the condition of the street, and their evidence tended to show that the ice was formed from water coming from the saloon, and that the street remained in that condition from the latter part of November, or early in December, until the ice melted in the spring.   There was a descending grade from where the pipe emptied to the place where the plaintiff fell.   That portion of the street was macadamized and there was no cross-walk from High street to the Public Square, a distance of three squares, and the one at High street was four hundred feet from where the accident happened.   The ice was smooth where the plaintiff fell, but was rough in some places, forming ridges, and was somewhat oval shaped.

The first question to be considered is whether the case should have been submitted to the jury.   In determining that we are, of course, to accept the evidence offered by the plaintiff, and cannot be governed by the fact that the defendant offered some in contradiction of parts of it.   The appellee contends that the plaintiff cannot recover, 1st, because he was guilty of contributory negligence, and 2nd, because the defendant is not liable under the circumstances, independent of the alleged negligence of the plaintiff.   It may well be questioned whether the first contention is properly before us, as no prayer was offered directly presenting it.   The prayer granted by the Court did not call upon it to determine whether the plaintiff had been guilty of contributory negligence.   When that is desired a prayer directing the Court's attention to the alleged negligence of the plaintiff, as a ground for refusing him relief, should be offered.   "By such an instruction," as the one before us, "the point decided is simply the *legal insufficiency* of the evidence to be considered by the jury."   *W. M. R. R. Co.* v. *Carter*, 59 Md. 311.   But as we are of the opinion that the case must be reversed, and as the question has been fully argued, we will consider it.

1.  We find nothing in the record that establishes such neg-

ligence on the part of the plaintiff as to justify the Court in determining, as a matter of law, that he so contributed to the accident as to preclude his recovery.   It is not negligence *per se* for a pedestrian to cross from one side of the street to the other, and it has been held by this Court "that persons have the right to cross the streets at any point along the thoroughfare." *Helm's case*, 84 Md. 526, and others there cited.   If a municipality provides suitable and convenient crossings, pedestrians cannot expect the whole of the thoroughfare to be kept as clean and smooth as the sidewalks, but unless he has notice of some defect, or by the use of due care could discover it, a person who crosses a street at a place other than a fixed crossing cannot be said to be thereby necessarily guilty of negligence.   And when, as in this case, the nearest crossing is four hundred feet away, it would be exacting a great deal of a pedestrian to require him to go to it, instead of crossing where he is to speak to a friend who is on the opposite side.   "A person desiring to cross the street, either in the nighttime or in the daytime, is not confined to a crossing.   He has a right to assume that all parts of the street intended for travel are reasonably safe." *Brusso* v. *Buffalo*, 90 N. Y. 679.   See also *Baker* v. *Grand Rapids*, 111 Mich. 447; *Lincoln* v. *Detroit*, 101 Mich. 245; *Raymond* v. *Lowell*, 6 Cush. 524; *Junction City*, v. *Blades*, 59 Kansas, 774.   Of course there may be circumstances which call upon one thus using a street to exercise greater care than would be required of him on the sidewalks, or places especially intended for pedestrians. But there is nothing in this record to show that the plaintiff was so indifferent to his own safety, or so lacking in the use of proper care, as to authorize the Court to say that he was negligent.   He testified he did not know the ice was there; that he walked as he always did, strong and firm, that he was always a careful walker, and was as careful that morning as he ever was in his life.   He also said there was no ice on the side from which he came, and if he had known there was on the other side he would not have gone over. It is true it was dark, but he had no reason to suppose he was going

into a dangerous place, if his testimony is to be believed, and that was for the jury. It was suggested by the counsel for the appellee that prudence required him to ask his friend, who had a lighted lantern, to elevate it or come forward so as to light the way. If he had known the ice was there he might have done so, but he says he did not know it, and hence had no reason to fear that he would subject himself to such danger by crossing the street at that point. Ordinarily it is for the jury to determine whether a plaintiff has been guilty of contributory negligence, and it is only when there are undisputed facts or circumstances establishing such negligence that the Court is authorized to decide that question. On this branch of the case therefore we think it was for the jury to say whether the plaintiff was negligent, and if so whether such negligence directly contributed to the injury complained of. In that connection it could have considered his opportunities to know the condition of the street, which his witnesses testified had existed for some weeks, and any other facts reflecting upon the question.

2. There can be no doubt that it is the duty of a municipality to keep the streets in a reasonably safe condition, when it is in its power to do so. But what is a reasonably safe condition must depend upon circumstances, and no city or town can be required to keep them absolutely safe under all circumstances. It would, for example, be very unreasonable to require the authorities of a city, such as Hagerstown, to keep its streets between the sidewalks, at all times free from snow and ice. The winters in that part of the State are often sufficiently severe to make it impracticable, if not impossible, to avoid having more or less ice on the streets for considerable periods of time. It sometimes happens that snow is so packed on the streets by the ordinary use of them, or is followed by such weather as to put it beyond the power of the authorities to remove it or prevent ice accumulating, by the use of such reasonable means as can be demanded of them. In cleaning the sidewalks the snow generally is, and usually must be thrown into the street and in a city like Hagerstown it would

be demanding too much to require it to be hauled away or entirely removed from the streets. Then again snow and rain may fall at the same time, or close together, and be followed by cold weather so as to produce such conditions as must continue until relieved by a change of temperature. Under such and similar circumstances it would not do to hold a municipality responsible for injuries sustained by one falling, by reason of slipping on ice, especially if he was not on the sidewalk. But this record presents facts, as shown by the plaintiff's witnesses, which distinguish the case from those arising under such conditions as we have just spoken of. The Mayor and Council of Hagerstown had the power to pass ordinances necessary for the good government of the city ; "to prevent, remove and abate all nuisances or obstructions in or upon the streets, highways, lanes or alleys, drains or water courses." Sec. 171 of Art. 22 of Code of Public Local Laws. We have already stated some of the facts attempted to be proven by the plaintiff. From them it will be seen that the condition of this street when the accident happened was owing entirely to the fact that the proprietor of a saloon was permitted to empty water into the street in large quantities. This had been going on for several years. One witness said it would commence to freeze as soon as cold weather set in and disappeared in March, and when the pipe would freeze up the water was thrown out from the saloon in buckets at night. The ice formed from four to six inches in thickness, extended into the street in some places four or five feet, filled up the gutter and ran in on the pavement and covered a distance of sixty or more feet in length, varying in width. When the accident happened it had been there more than a month. A man and a lady testified they had fallen on the ice and a number of horses fell on it. One witness said he had notified the Chief of Police and the Mayor of the City and warned the Mayor that there would be an accident there.

Under such circumstances, if established to the satisfaction of a jury, can the Court say there can be no recovery for injuries sustained by one, using due care, who fell on the ice in

crossing the street? The municipal authorities not only had the power, but it was their duty to abate such a nuisance as the plaintiff's testimony tends to show that was, if aware of its existence, of which there was evidence. As was said in the familiar case of *Baltimore* v. *Marriott*, 9 Md. 160: "It is a well-settled principle that when a statute confers a power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary but imperative, and the words 'power and authority,' in such case, may be construed *duty and obligation.*" That was an action for negligence in not preventing or removing an accumulation of ice on the footway of a street in Baltimore, and while we do not mean to say that municipal authorities are required to exercise the same degree of care to guard against accidents from such a cause on the driveways, as on sidewalks, yet when the evidence discloses such facts and circumstances as those we have related, there is a "duty and obligation" on them to use reasonable efforts to protect the public from injury when in the lawful use of the streets, whether it be a part of the sidewalk or in the driveway. We have cited above a number of authorities, including *Helm's case*, decided by this Court, which hold that pedestrians have the right to cross streets at points other than established crossings, and they having that right are justified in assuming that they will not be subjected to the dangers of such a nuisance as the plaintiff's testimony tends to show this place to have been. In order that we may not be misunderstood, we desire to emphasize the fact, at the risk of repetition, that we do not mean to say that the appellee would be liable if this ice was simply the result of snow or rain, or both, falling and then freezing. If it had been, and if the ice thereby formed was in large quantities in the streets, it would be exacting too much to require the municipal authorities to remove it. Under such conditions persons crossing the streets would or could know the danger and would be required to use more care than is expected of them in walking on the sidewalk, and the conclusion we have reached is based on the particular facts of

this case which show that the ice was formed in the manner
we have stated and to such an extent as to become a nuisance,
which it was the duty of the appellee to abate.    The distinc-
tion is to some extent pointed out in *Flynn* v. *Canton Co.*, 40
Md. 312.

3. Counsel for the appellee cited cases which hold that a
municipality is not liable if the party injured falls on smooth
ice, while it may be if the ice has been allowed to remain in
ridges or mounds.    That is upon the theory that the latter
actually form an obstruction to the highway, and that the
former cannot reasonably be avoided.    Although they were
decided by Courts whose decisions are entitled to great re-
spect, some of them ranking among the highest in this
country, we cannot adopt such a distinction, if it is to be ap-
plied to circumstances such as those before us.    Primarily the
ground for holding a municipality liable for injuries sustained
by ice on a highway is that it has been negligent in not pre-
venting or not removing it, and if it has used reasonable care
and diligence in those respects it is not liable.    But if it has
been so negligent and if the ice is dangerous because it is
smooth and slippery, why should it not be held liable, as well
as if the ice be in ridges or mounds ?    Smooth, even ice is
likely to cause more people to fall than when it is rough and
uneven.    The latter is more easily observed and very little
snow on the former may entirely conceal it from the obser-
vation of a careful pedestrian, and it oftentimes results in dan-
gerous falls.

In *Marriott's case, supra*, the statement of facts shows that
the plaintiff fell "on a large sheet of slippery ice," which was
formed by the freezing of water running from hydrants and
the judgment for injuries thereby sustained was affirmed.    It
is true that distinction does not appear to have been made or
considered, but the fact that it was smooth ice was before the
Court.    In *Cloughessey* v. *City of Waterbury*, 51 Conn. 405,
the difference between ice in ridges and that which is smooth
and level was considered, as affecting the liability of munici-
palities, and that Court declined to recognize it.    It was there

said that the authorities which adopted the doctrine were based .on the decision in *Stanton* v. *Springfield*, 12 Allen, 566, and the Connecticut Court undertook to show that in Massachusetts it had been virtually repudiated by the case of *Cromarty* v. *Boston*, 127 Mass. 329, where a city was held liable for injuries sustained by reason of glass and iron in a sidewalk becoming smooth and slippery, and other cases in Massachusetts are cited to show that the doctrine has been somewhat modified by the Supreme Court of that State. But however that may be, an examination of the cases decided by that Court on this subject will show that they are largely based on the construction of statutes imposing duties on municipalities, and they as a rule refer to ice formed from snow or rain and not to that formed as this was. In most of the States where the distinction is recognized, the climate is much more severe than it is here, but in this State if an injury is sustained by reason of the slippery condition of the streets, caused by a recent sleet or snow, which is so extensive as to make it impracticable to remove it by the use of reasonable means, there could ordinarily be no recovery. Municipal authorities are not required to prevent snow and ice from getting on the streets in cold weather, or to do other impossible things. Nor can it be expected that those in control of a city like Hagerstown should remove all snow and ice from the streets, between sidewalks. But according to the theory of the appellant, there was no recent snow and the ic  co  plained of was not the result of snow or rain falling, but it was caused by the freezing of water which was emptied into the street, through the pipe leading into the saloon or from buckets, or both, from day to day and for a long period of time, and with the knowledge of the appellee. Indeed there was some evidence that it was by its express permission.

There are many cases to the effect that a municipality may be liable for the accumulation of ice resulting from its own negligence. *Chicago* v. *Smith*, 48 Ill. 107; *Hall* v. *Lowell*, 10 Cush. 260; *Bishop* v. *Goshen*, 120 N. Y. 337; *Decker* v. *Scranton*, 151 Pa. 241; *Gaylord* v. *New Britain*, 58 Conn.

398; *McGowan* v. *Boston*, 170 Mass. 384; and other cases cited in 15 *A. & E. Ency. of Law* (2nd ed.) 449. And in such a case it has been held that the fact that the ice was smooth is no defense, even in a State where the distinction between smooth and rough ice is fully recognized. *Decker* v. *Scranton, supra.* It was for the jury to determine whether this ice was formed from water emptied out of the saloon, or from causes over which the appellee had no control, whether it had continued for such time as to be constructive notice to the authorities or they had actual notice of the condition of the street, and a sufficient length of time had elapsed to enable them to remove it, or protect the public from its dangers, if that could reasonably have been done, and other facts reflecting upon the question whether the appellee had exercised reasonable care and diligence to keep the highway safe. In the note to *Hausmann* v. *Madison*, 21 L. R. A. 277, many cases to that effect are cited. There was error in granting the defendant's prayer.

4. The plaintiff's first prayer was properly rejected. It does not leave to the jury to determine how the ice was formed—whether from water thus allowed to be emptied into the street, or merely as the result of cold weather following snow or rain. Two witnesses on the part of the defendant testified that no water had "run out" of the saloon in December and January. If that be true, and it was not permitted to be thrown out, but the ice was formed by reason of some recent snow or rain which froze, it would be holding the appellee to too strict a liability to say it should have removed ice thus formed on the street. Then this prayer submits to the jury to find whether ice had accumulated on "the foot-way, gutter and street," so as to obstruct and endanger the public in walking across the street, *"and along the said sidewalk."* This accident did not occur on the sidewalk, and the jury might have been misled by that prayer. It might have been of the opinion that the defendant was negligent in not cleaning the sidewalk, but it was not so negligent in not keeping the street clean (outside the curbs,) and yet have understood that it

could find for the plaintiff if the defendant was negligent in reference to the sidewalk.

The second prayer also omits all reference to the cause of the ice. The third asks the Court to say it was the duty of the defendant to keep its streets, from sidewalk to sidewalk, in such condition that foot passengers may be able to cross with a reasonable degree of safety, using proper care and caution themselves, "at any and all times." There may be times when that is impossible. For example there was some testimony that there was a sleet the night before this accident, and it would be impossible for the authorities to keep the streets safe, if they were covered with sleet. What we have said of the first is applicable to the fourth. These four prayers were properly rejected. The fifth is on the measure of damages and seems to state the rule correctly, as adopted in a number of cases in this State.

> *Judgment reversed, the appellee to pay*
> *the costs, and a new trial awarded.*

(Decided April 1st, 1902.)