BECKER, Respondent, v. CITY OF MITCHELL, Appellant.

(250 N. W. 31.)

(File No. 7483. Opinion filed September 6, 1933.)

*Danforth & Seacat* and *C. S. Whiting,* all of Mitchell, for Appellant.

*Lauritz Miller,* of Mitchell, for Respondent.

WARREN, J. This action for damages was instituted by the plaintiff for injuries sustained by her slipping and falling on defendant's sidewalk. The plaintiff is a widow fifty-seven years of age. She sustained injuries in the form of a broken and dislocated hip bone, also bruises and injuries to her body, limbs, back, and spine, and was confined to a hospital for some over six months. Verdict and judgment being in favor of the plaintiff, the defendant has appealed.

It would appear from the evidence that the place where the accident occurred was just a little ways south of the city hall, and was in full view of the windows of the offices of the mayor and the city engineer, and that some of the officials passed this place every day in going to and from their offices. There is also evidence that the city had the ground adjoining the sidewalk where the accident occurred leased at the time of the accident, and had had such ground leased for some time prior to the accident. There is also evidence to the effect that at the place of the accident the sidewalk was lower than the ground surrounding it, and that the sidewalk was bulged up in the center so as to slope both ways; that there were depressions in the sidewalk and that whenever it rained or the snow melted the water from the adjoining land would run onto the sidewalk and, because of the depressions, would accumulate there and remain on the sidewalk and in cold weather the water froze and formed ice on the sidewalk.

There are six different assignments of error why the judgment should be reversed, some of which will be treated as pertinent to our decision; the others need no consideration in the conclusion that we will hereinafter reach. The correctness of the court's instructions to the jury is not raised and we need not burden this opinion with the correctness of the defendant's request and the instruction as given, as there is no exception to the instructions as given by the court.

An examination of the evidence discloses the fact that the sidewalk was so constructed that water from rain and melting snow would gather thereon and during the cold weather would freeze and cause a slippery surface; that on the second of January, 1930, such an icy condition existed, the ice being "as smooth as glass"; that the ice was covered with a light snow which had fallen early that morning thereby obscuring said icy condition from

plaintiff's observation; that the snow and ice were permitted to accumulate on the sidewalk and that it had not been removed; that this icy condition of the sidewalk on which she was injured was and had been in existence for some time prior to her injury. There is evidence tending to show that the officers and agents of said city had actual knowledge of the state of repair of said sidewalk, but that they had neglected to remedy the defect.

The respondent in support of her judgment does not claim that the city was negligent in its failure to remove the snow from the sidewalk the morning of the accident, but she does claim that the city was negligent in permitting the sidewalk to get into such condition as to allow an accumulation of snow, water, and ice on it for a long period of time so as to create a dangerous condition for those attempting to use the sidewalk; that the city was derelict in permitting the sidewalk to be maintained at a lower level than the adjoining land; that it permitted the sidewalk to bulge in the center so as to form ditches on either side of the middle and the adjacent land; that it was negligent in making no provisions for the draining off of the water which accumulated thereon, and in permitting ice to remain on said sidewalk for weeks at a time; that all of said acts taken together contributed to the accident for which the city is liable.

During the trial of said case several of the witnesses testified that people who lived on Rowley street were, at the point where plaintiff fell, often compelled to walk out in the street to avoid walking in the slush, water, and ice which accumulated there because of the low level of the side walk, and that during the winter people avoided the place because of the ice which froze there and caused a dangerous condition. Mrs. Davis, one of the witnesses, testified that three weeks before the plaintiff fell and was injured, she herself fell on the ice in approximately the same place where plaintiff fell and was injured. She further testified that this icy condition had existed for more than three weeks prior to the time she fell, and continued to exist throughout the winter. Another witness testified that in the spring of 1930 he went out and dug a ditch from said sidewalk to the street to allow the waters which had accumulated thereon to drain off into the street.

Both the plaintiff and defendant admit the presence of ice on the sidewalk, but appellant contends that this icy condition of the

street was caused by a sleet storm the morning of the second of January, and claims that said slippery sidewalk was due to a sleet storm and that said appellant is not guilty of negligence and should not be adjudged liable for injuries resulting therefrom.

It seems to be the established law of our state regarding such circumstances that a city cannot be held guilty of negligence in failing to remove from its streets smooth ice caused by recent sleet storms, and that a city is not liable where the accident resulted from the slipperiness of the walk caused by a sleety condition existing over the city resulting from such recent sleet storm. However, upon the trial this matter was submitted to the jury and became an issue of fact, and the testimony shows that only one person, an employee of the city, testified to such a sleet storm, while several witnesses testified negatively. From the testimony the jury might conclude that while there was a little snow on the morning of January 2, 1930, as testified to by plaintiff, still there was no sleet storm, and therefore any ice which had formed on the sidewalk must have formed there previously to the morning of January 2nd.

The appellant further contends that because the ice on which respondent fell was smooth glare ice, the city is not liable, and further states that it is a well-established rule that the mere slipperiness of a sidewalk occasioned by glare ice or snow resulting from natural causes is not sufficient to charge a municipality with liability for injury resulting therefrom where the walk is properly constructed and there is no accumulation of ice and snow as to constitute an obstruction. It appears from the evidence in this case that the city had permitted said sidewalk to become deeply imbedded in the earth, since it was lower than the level of the banks on either side of it, and that due to said catch basin water, slush, and ice were allowed to accumulate there.

We have examined many authorities concerning liability of cities in cases where the ice is rough, and in hummocks and mounds, if left on sidewalks for an unreasonable length of time. In the case at bar, on account of the sidewalk's being low, and therefore causing water to stand in the low place or catch basin, it would fall within the rule announced in paragraph C on page 449, 15 Am. & Eng. Enc. of Law, as follows: "The municipality is liable also for injuries caused by smooth or rough ice which would not have formed had there not been a structural defect in the highway preventing the water thereon from flowing off."

In support of the foregoing rule of law, see cases cited in footnote 11.

The sidewalk at the particular point where respondent fell was low, with shoulders on each side preventing the water thereon from flowing off. While it probably wasn't strictly a structural defect, yet the city failed to remedy the defect either by raising the sidewalk, removing the shoulders so that the water could drain off, or to cause gravel or other substances to be placed thereon for the protection of the traveling public. The liability is the same as though it were a structural defect in the sidewalk. The matter of the defect, structural or otherwise, was purely for the jury to decide. It was submitted to the jury upon proper instructions, and the jury having found for the respondent, all of the issues such as negligence and knowledge on the part of the city were determined in favor of the respondent, and we are not therefore at liberty upon the record before us to disturb the verdict.

The fact that the ice was smooth should not be recognized as a defense, because smooth ice may be and perhaps is more treacherous and dangerous than rough, bumpy ice. In the case of Magaha v. Mayor, etc., City of Hagerstown, 95 Md. 62, 51 A. 832, 836, 93 Am. St. Rep. 317, regarding the liability of a city due to an accident caused by smooth glare ice, the court said: "There are many cases to the effect that a municipality may be liable for the accumulation of ice resulting from its own negligence. City of Chicago v. Smith, 48 Ill. 107; Hall v. City of Lowell, 10 Cush. [Mass.] 260; Bishop v. Village of Goshen, 120 N. Y. 337, 24 N. E. 720; Decker v. Scranton City, 151 Pa. 241, 25 A. 36, 31 Am. St. Rep. 757; Gaylord v. City of New Britain, 58 Conn. 398, 20 A. 365, 8 L. R. A. 752; McGowan v. City of Boston, 170 Mass. 384, 49 N. E. 633, and other cases cited in 15 Am. & Eng. Enc. Law (2d Ed.) 449. And in such a case it has been held that the fact that the ice was smooth is no defense, even in a state where the distinction between smooth and rough ice is fully recognized. Decker v. Scranton City, supra. It was for the jury to determine whether this ice was formed from water emptied out of the saloon, or from causes over which the appellee had no control, whether it had continued for such time as to be constructive notice to the authorities or they had actual notice of the condition of the street, and a sufficient length of time had elapsed to enable them to re-

move it, or protect the public from its dangers, if that could reasonably have been done, and other facts reflecting upon the question whether the appellee had exercised reasonable care and diligence to keep the highway safe." See Adams v. Chicopee, 147 Mass. 440, 18 N. E. 231.

The fact that such a condition existed on Rowley street in the city of Mitchell and had, according to the testimony, existed for a considerable time prior to said accident, must have been known to the officials of the city, and the fact that they had neglected to eliminate such condition would seem to this court to charge them with negligence in maintaining sidewalks safe for pedestrians.

In Carrie Dracass, Appellee, v. City of Chicago, Appellant, 193 Ill. App. 75, the court announced the liability of a city for the dangerous condition of the sidewalk as follows: "Where an injury is caused by slipping on ice which had accumulated in a depression in the sidewalk and had been covered that morning by a fall of snow, the proximate causes of the injury were the depression and the ice, and the city cannot relieve itself from liability on the ground that it did not know and could not have known of the presence of the snow."

We feel that the above statement expresses the law more clearly than a large number of cases that we have examined, and is peculiarly adapted to the facts in this case. The same rule of law seems to prevail in Pennsylvania, wherein they hold in Decker v. Scranton City, 151 Pa. 241, 25 A. 36, 31 Am. St. Rep. 757, that where ice has accumulated on a street by reason of neglect on the part of the city to construct and maintain suitable drains to carry away surface water the city is liable to a person injured by slipping and falling upon ice. See, also, cases cited in footnote on page 759 of 31 Am. St. Rep.

One of the witnesses testified that he himself went out in the spring of 1930 and dug a ditch to allow the waters accumulated on the sidewalk to drain off into the street, and testified that since he had done that no water had accumulated on said sidewalk. In the case of Cloughessey v. City of Waterbury, 51 Conn. 405, 417, 50 Am. Rep. 38, the court said: "We hold on the contrary that if ice is found on the sidewalks to a limited extent, in a dangerous condition, whether smooth or otherwise, and the city has ample notice of the fact and can with reasonable expenditure make the

passage safe for travel, it ought to do it, and is responsible for the consequences if the duty is neglected. * * * That no sand or other substance had been put upon the ice to make it more safe, as might easily have been done, but it had been permitted by the defendant during all this time to remain in the same slippery and dangerous condition—and that the plaintiff while in the exercise of ordinary care slipped and fell upon the ice and was thereby injured."

From all of the foregoing cases it would appear that there is a respectable line of authorities to the effect that where a city has had notice of a dangerous condition existing and having existed for some time on its sidewalks, and had done nothing to remove said dangerous condition, then said city is liable for injuries caused by such dangerous condition and resulting from its own negligence. Since this case is based almost entirely on the question of whether or not the defendant city is liable, it would appear to this court from all the evidence submitted that the city had ample opportunity to eliminate such dangerous icy condition of its sidewalks, and by its failure to so do thereby became liable for any and all injuries suffered because of its negligence in failing to remove the dangerous condition which existed.

We have carefully examined the record as to the other assignments of error and feel that the appellant has not been prejudiced thereby, and we must therefore affirm the judgment and order appealed from.

POLLEY, J., concurs in the affirmance of the judgment.

ROBERTS, J., concurs in result.

RUDOLPH, P. J., and CAMPBELL, J., dissent.