JOSEPH PAJOR *v.* TOWN OF WALLINGFORD
(AC 16091)

O'Connell, C. J., and Dupont and Shea, Js.

---

Argued September 24—officially released December 30, 1997

*Thomas R. Gerarde*, with whom was *David S. Monas-tersky*, for the appellant-appellee (defendant).

*William F. Gallagher*, with whom, on the brief, were *Barbara L. Cox* and *James G. Williams*, for the appellee-appellant (plaintiff).

*Opinion*

SHEA, J. The defendant town of Wallingford appeals from the judgment rendered after a jury verdict awarding $700,000 to Joseph Pajor, the plaintiff,[1] for injuries he sustained when he slipped and fell on a patch of ice on the sidewalk adjacent to the town hall. The defendant claims that the judgment should be reversed and a new trial ordered because the trial court incorrectly (1) admitted evidence relating to conditions of the adjoining land of the town that were naturally productive of ice on the sidewalk, (2) refused to charge, in accordance with the town's request, that notice of the particular defect causing injury and not merely notice of conditions likely to produce such a defect is essential to satisfy the notice requirement of the statute imposing liability for a defective sidewalk, General Statutes § 13a-149,[2] and (3) failed to set aside the verdict because of

[1] During the pendency of this appeal, the original plaintiff, Joseph Pajor, died. The executrix of his estate, Margaret Pajor, was substituted as the plaintiff. Throughout this opinion, the word "plaintiff" refers to Joseph Pajor.

[2] General Statutes § 13a-149 provides: "Damages for injuries by means of defective roads and bridges. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the

the jury response to a written interrogatory concerning the sufficiency, under § 13a-149, of the written notice given to the town. We reverse the judgment and order a new trial because of the failure of the trial court to charge in accordance with the defendant's request on the issue of notice.

After a hearing on posttrial motions, the trial court, pursuant to General Statutes § 52-225a, reduced the jury award to $530,324.03 by deducting the collateral source benefits the plaintiff had received from his health insurer and crediting the plaintiff with the premiums he had paid to his insurer. That reduction caused the amount of the judgment to be less than the $675,000 offer of judgment that the plaintiff had filed prior to the verdict and thus precluded the application of General Statutes § 52-192a, which allows a plaintiff who obtains a judgment equal to or greater than his timely offer of judgment to recover prejudgment interest on the amount of the judgment. The plaintiff filed a cross appeal contesting the reduction of the verdict for the collateral source benefits. Although we order a new trial, we address some of the issues raised in the cross appeal that are likely to arise in subsequent proceedings.

There is no significant dispute about the facts the jury might reasonably have found in support of the verdict from the evidence concerning the circumstances of the fall that caused the plaintiff's injuries.

time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

On February 8, 1994, at about 11:30 a.m., the plaintiff was walking along Prince Street in Wallingford on the sidewalk that borders the town hall property. A driveway crosses the Prince Street sidewalk and leads to a parking lot behind the town hall for municipal employees and visitors to the building. At a point close to the driveway, the plaintiff slipped and fell on a patch of ice on the sidewalk. The ice patch was three or four feet wide and was concealed by one-half to one inch of snow. It had begun to snow between 8 and 9 a.m. and snow was falling heavily at the time the plaintiff fell.

At about 5:45 a.m., before the snow began, Pasquale Cusano, who was employed by a private maintenance contractor to work as a janitor in the town hall, observed the ice patch as he entered the town hall driveway on his way to work. Approximately six hours later, when he happened to be looking out from a window of the town hall, Cusano saw the plaintiff fall and went outside to assist him. Cusano observed the ice under the snow and noticed that it was quite slippery. That part of the sidewalk was often icy in the winter because water from melting snow on the adjoining town hall property flowed across it. Snow from other storms was piled up along the edges of the sidewalk. During the previous day, the temperature had risen and remained above freezing until about 5 p.m., when the temperature dropped below freezing and remained below freezing until the time the plaintiff fell.

Ordinarily, three employees of the Wallingford public works department are assigned to maintain the grounds around the town hall and to spread sand and salt on any ice on the sidewalk. They are usually at the town hall property by 8 a.m. to perform their duties. On the morning of the plaintiff's fall, they began work at 7:30 a.m. at the town garage, where the department was preparing for a predicted snowfall. They were assigned to their regular duties of attending to the sidewalks

and driveways at the town hall and three other town properties. From the evidence, however, the jury could reasonably have found that there was no sand or salt on the sidewalk where the plaintiff fell.

I

At trial, the plaintiff called Timothy Brown, a licensed civil engineer, to testify as an expert witness. He testified that in 1990, as part of a beautification project, the town of Wallingford had reconstructed the sidewalk on Prince Street adjoining the town hall property, and that he had examined the map showing the site layout. He had made a topographical survey of the area around the part of the sidewalk where the plaintiff had fallen and had prepared a map showing the direction of water flow from several points on the town hall property. It was his opinion that the town engineering department should have realized from examining the site layout plan that water from the town hall property would run across the sidewalk at the point where the driveway to the parking lot crossed the sidewalk and that the problem should have been corrected at the time of the reconstruction.

The defendant objected and the court excused the jury as requested. The defendant argued that the complaint did not allege any defective design and that Brown's testimony was outside the scope of the complaint and also outside § 13a-149, the statutory basis for the claim of breach of the town's duty to maintain the sidewalk in a reasonably safe condition.

The trial court overruled the objection, stating that the evidence was relevant to "notice of problems in the area and to the notice of what preventive care would be necessary." The court ruled that the complaint did not state a claim of defective design but that information concerning the design was relevant to some of the claims in the complaint.

On appeal, the defendant has not briefed its challenge on relevancy grounds to the testimony of Brown that at the time of the reconstruction in 1990 as well as later, the town should have known that water from its property would flow across the sidewalk where the plaintiff fell. Accordingly, we treat the objection raised at trial as abandoned. See Practice Book § 4064C (3); *State* v. *Kolinsky,* 182 Conn. 533, 542, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981). The defendant now claims that the evidence should not have been admitted because it did not concern notice of the defect itself but merely of conditions that naturally produce ice on that sidewalk. The defendant relies on several cases involving claims against governmental agencies for injuries received as a result of the icy condition of a sidewalk or highway in which our courts have declared that the constructive notice necessary for liability is "notice of a defective condition which is the proximate cause of the injury; and . . . notice of underlying circumstances which, as a result of natural forces, may and do produce that condition does not impose liability." *Scoville* v. *West Hartford,* 131 Conn. 239, 242, 38 A.2d 681 (1944); see *Pape* v. *Cox,* 129 Conn. 256, 259–60, 28 A.2d 10 (1942); *Carl* v. *New Haven,* 93 Conn. 622, 628, 107 A. 502 (1919); *Cohen* v. *Hamden,* 27 Conn. App. 487, 492, 607 A.2d 452 (1992).

A party cannot on appeal rely on a ground for excluding evidence admitted at trial that was not raised at the time of the ruling on its admissibility. "A party is limited to the ground of his objection in claiming error in a ruling on evidence." *Moore* v. *McNamara,* 201 Conn. 16, 30, 513 A.2d 660 (1986); *State* v. *Moye,* 214 Conn. 89, 98–99 n.6, 570 A.2d 209 (1990). "Our rule requires that the grounds upon which it is claimed evidence should be admitted or excluded shall be clearly stated." *Johnson* v. *Rockaway Bus Corp.,* 145 Conn. 204, 210,

140 A.2d 708 (1958), quoted in *Mays* v. *Mays*, 193 Conn. 261, 268, 476 A.2d 562 (1984); see Practice Book § 288. Whatever the merit of the defendant's argument for excluding Brown's testimony about conditions that may have caused the sidewalk to be covered with ice,[3] it cannot serve as a basis for reversing the judgment when that ground was not raised at the time of the trial court's ruling on admissibility.

## II

At the close of evidence, the defendant filed a written request for the court to charge that in a snow and ice case, the notice required by law to impose liability on the town is notice of the particular defect that caused the injury and not merely of conditions naturally productive of the defect and in fact producing it.[4] The trial court did not charge in the language of the request, apparently assuming that the legal principles contained in the request had been included in the charge. In excepting to the jury instructions, the defendant stated that the court had failed to advise the jury that notice of conditions naturally productive of the defect, which in

[3] In none of the cases cited in the defendant's brief in support of its claim that evidence of conditions naturally productive of ice on a sidewalk or a highway should be excluded does it appear that such evidence was excluded or that such an objection was even raised. Such evidence would often be relevant to prove the existence of the defect relied upon, its nature and the time when it should have been observed by the municipality.

[4] The defendant submitted the following request to charge: "The notice required under our law in snow and ice fall-down cases such as this one is notice of the particular defect itself which caused the injury and not merely notice of conditions naturally productive of the defect and in fact producing it. Thus, the fact of below-freezing weather conditions after a period the day before when the temperature went above freezing coupled with the presence of accumulated piles of snow from prior snowfalls, is not by itself sufficient notice. If the plaintiff is to prevail you must find that the ice upon which you find he fell was at the locus of the accident for a sufficient period of time and was of such a dangerous character so that the particular condition itself should have been discovered had the Town exercised reasonable supervision over its highways and sidewalks as a whole. *Cohen* v. *Hamden*, 27 Conn. App. 487, 492 [607 A.2d 452] (1992)."

fact produced it, was not sufficient. The court refused to instruct the jury further on the issue of notice, saying that the defendant simply wanted "counsel's words" to be used rather than those of the court.

In the charge,[5] the court referred to the plaintiff's "position" that "there had been banks of snow that melted and created runoff that resulted in ice when the temperatures fell" and that Cusano "had seen that condition when he arrived for work" in the morning. The portion of the charge the court may have relied on as sufficiently stating the legal principle contained in the plaintiff's request to charge is the following: "Now

[5] The trial court charged the jury on constructive notice as follows: "The other kind of notice is what is called constructive notice. If the condition that is claimed to be a defect was present for a sufficient length of time, that if the town was using reasonable efforts to inspect its roads and sidewalks it would have discovered the condition, then you may find that the defendant had constructive notice of it. With regard to this issue of notice, the plaintiff apparently takes the position that there had been banks of snow that melted and created runoff that resulted in ice when temperatures fell and that Mr. Cusano, the inside maintenance worker, had seen that condition when he arrived for work the morning of February 8, 1994. . . The plaintiff takes the position that the town employees responsible for the area had sufficient opportunity between 7:30 and about 11:30 to discover and remedy the condition if they had been using reasonable care to inspect the areas that the town had a duty to keep in reasonably safe condition for the use of people using that location.

"Now the only defect claimed by the plaintiff is a slippery condition. There was some testimony about the design of the area. And while you may consider that evidence in relation to considering whether there was a slippery condition, the plaintiff has not claimed that the defect was some defective design in the area of the sidewalk. Since that is not the basis of the claim, you must consider only the claim of defect that he has made and that is of the slippery condition and a failure to remedy it. The defendant's position appears to be that no icy or slippery condition existed and the defendant also takes the position that if there was such a condition, that it had not existed for a long enough time for the employees assigned to the Town Hall area to discover and remedy it. The defendant also takes the position that it had crews assigned to Town Hall in a schedule that was sufficient to constitute reasonable care to discover and remedy defective conditions given all of the area for which the town was responsible during winter conditions."

the only defect claimed by the plaintiff is a slippery condition. There was some testimony about the design of the area. And while you may consider that evidence in relation to considering whether there was a slippery condition, the plaintiff has not claimed that the defect was some defective design in the area of the sidewalk. Since that is not the basis of the claim, you must consider only the claim of defect that he has made and that is of the slippery condition and a failure to remedy it."

"It is the law of this state that a request to charge which is relevant to the issues of a case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Citations omitted.) *Mazzucco* v. *Krall Coal & Oil Co.*, 172 Conn. 355, 357, 374 A.2d 1047 (1977), quoted in *State* v. *Gabriel*, 192 Conn. 405, 418, 473 A.2d 300 (1984).

The legal principle on which the defendant sought a jury instruction, that the town would not be liable under the statute unless it had "notice of the particular defect which caused the injury and not merely of conditions naturally productive of the defect and in fact producing it," in this state was first articulated in *Carl* v. *New Haven*, supra, 93 Conn. 628. In justification of this restricted concept of notice as compared to the common law[6] formulations of "having reason to know" or

---

[6] In *Bartram* v. *Sharon*, 71 Conn. 686, 693–94, 43 A. 143 (1899), the court construed a predecessor of General Statutes § 13a-149, which imposed liability for a defective highway on municipalities, not to be congruent with the common law of negligence. The court held that for a recovery pursuant to the statute, the defect must be the sole proximate cause of the injury, thus eschewing the common law doctrine of joint liability for tortfeasors. "The construction and maintenance of highways is a governmental act, controlled by the sovereign law-making power. When its exercise is imposed on a territorial corporation, such corporation is a governmental agent and is not responsible as a private corporation to any individual in respect to its neglect to execute the power. A failure to obey the law may be a public wrong, but cannot be a private wrong. Such public wrong has no answering rights in

"should know"; 1 Restatement (Second), Torts § 12 (1) and (2), pp. 19–20 (1965); the court opined: "Were it otherwise, and municipalities were charged with notice of defects which the future should develop upon the strength alone of their knowledge of such conditions as were calculated to produce them, the expansion of municipality liability for highway defects would be enormous, the burden of repair and remedy cast upon them be vastly enlarged, and a wide field of uncertainty opened up in which triers might wander comparatively unrestrained in speculations as to causes and anticipated results." *Carl* v. *New Haven*, supra, 628–29. The rule announced in *Carl* has not been modified. "We have repeatedly held that liability under the statute arises only when there is notice of a defective condition which is the proximate cause of the injury; and that notice of underlying circumstances which, as a result of natural forces, may and do produce that condition does not impose that liability." *Scoville* v. *West Hartford*, supra, 131 Conn. 242.[7]

The trial court's charge in this case that "the only defect claimed by the plaintiff is a slippery condition" and that the testimony of Brown about "the design of the area" should be considered only in relation to

individuals, and therefore cannot be the subject of a civil action; unless made so by statute." Id., 692.

[7] The opinion in *Carl* v. *New Haven*, supra, 93 Conn. 622, relied on cases from Maine and Massachusetts involving statutes in those states similar to General Statutes § 13a-149 that imposed liability on municipalities for defective highways. See *Pendleton* v. *Northport*, 80 Me. 598, 600, 16 A. 253 (1888); *Smyth* v. *Bangor*, 72 Me. 249, 252 (1881); *Ryerson* v. *Abington*, 102 Mass. 526, 532 (1869). A Maine statute currently exempts a town from liability "to an action for damages to any person on foot on account of snow or ice on any sidewalk or crosswalk [or] on account of the slippery condition of any sidewalk or crosswalk." Me. Rev. Stat. Ann. tit. 23, § 3658. Massachusetts statutes allow a maximum of $5000 to be recovered for injuries caused by a "defective way," but no recovery is permitted if the only defect causing injury was snow and ice. See Mass. Gen. Laws ch. 84, §§ 15, 17; see also *Mix* v. *Commonwealth*, 408 Mass. 736, 738, 563 N.E.2d 229 (1990).

"whether there was a slippery condition" attempted to focus the attention of the jury on the icy condition of the sidewalk as the defect. It did not inform the jury, however, that it would be insufficient under the statute for the town to have notice only of conditions naturally productive of the defect, such as snowbanks that melted during the day and caused water to flow across the sidewalk that would freeze when the temperature dropped. The court, in the preceding paragraph of the charge, had referred to "banks of snow that melted and created runoff that resulted in ice when temperatures fell." In its request to charge, the defendant sought an instruction that "the fact of below-freezing weather conditions after a period the day before when the temperature went above freezing coupled with the presence of accumulated piles of snow from prior snowfalls, is not by itself sufficient notice." Without some similar instruction, it would not be unreasonable for the jury to have concluded that the town should have realized that the snow on the town hall property would melt, causing water to flow onto the sidewalk, where it would freeze when the weather becomes cold and, therefore, that the town had sufficient constructive notice of the resulting slippery condition.

The court made a significant comment when it overruled the defendant's objection to Brown's testimony about the topography of the town hall property causing the runoff on the sidewalk and corrective measures that the town should have adopted. The court, in the absence of the jury, expressed the view that such evidence was relevant "to notice of the problems in the area and the notice of what preventive care would be necessary," referring to Brown's testimony "about what the design was and whether it did or didn't have swales and catch basins." Although the jury never heard them, the court's comments indicate the view most people

would take in deciding whether the town had reasonable notice of the slippery sidewalk.

In deciding whether a failure to comply with a proper request for a charge on a significant principle of law warrants a reversal of the judgment and a new trial, "the court must consider the whole charge and it must be determined, in appeals not involving a constitutional question, if it is reasonably probable that the jury were misled . . . ." (Citations omitted.) *State* v. *Rose*, 169 Conn. 683, 687–88, 363 A.2d 1077 (1975), quoted in *State* v. *Chapman*, 229 Conn. 529, 545, 643 A.2d 1213 (1994). We recognize that apart from the testimony about runoff from the melting snow on the sidewalk, there was sufficient evidence to support a finding of constructive notice to the town. The refusal to give the requested instruction or its equivalent, therefore, probably had a significant impact on the verdict. We conclude, nevertheless, that it is reasonably probable that the jury was misled into relying in part on such testimony to find constructive notice, and a new trial is necessary.

### III

The defendant's final claim is that the written notice that the plaintiff gave to the town, as required by § 13a-149 for an action against a municipality seeking damages for a defective highway, does not comply with that statute. The town contends that the notice is deficient as a matter of law because it failed to specify accurately the time and location of the plaintiff's fall and also did not provide an adequate description of his injuries. The trial court submitted the issue of the sufficiency of the notice to the jury with an instruction that is unchallenged together with ten interrogatories, two of which pertained to the notice: (1) "Did the plaintiff give the defendant a written notice that complied with the requirements of Section 13a-149?" (2) "If there was any inaccuracy in the notice, did the plaintiff prove (a) that

there was no intention to mislead the town; (b) that the town was not in fact misled." The jury responded affirmatively to the first interrogatory, but, as directed by the charge and also the instructions on the verdict form, did not answer the second.

The defendant claims that the response of the jury that the plaintiff's written notice complied with the statutory requirement was contrary to the evidence as a matter of law. We address this issue because it is likely to arise in the new trial we have ordered.

The defendant does not contend that the plaintiff's written notice[8] failed to furnish information concerning each of the elements required by § 13a-149 but that the notice was inaccurate with respect to the description and cause of the injury, and the time and location of the fall. When a notice fails to provide information respecting each of the required elements, it is deficient as a matter of law. See *Morico* v. *Cox*, 134 Conn. 218, 222–23, 56 A.2d 522 (1947). On cross-examination, the plaintiff testified that he fell at 11:30 a.m. and not "at or about 10:15 a.m.," as stated in the notice; he fell where the sidewalk crosses the driveway to the town hall and not within the triangular area of the driveway shown on a map based on three measurements contained in the notice, which was "totally different"; he sustained a compound fracture of his right ankle rather than "severe injuries to muscles, ligaments, soft tissues and bones of the right leg," the description contained in the notice, which was "totally incorrect"; and he slipped on ice covered by a small accumulation of light snow and not "because of accumulated hard-packed ice and snow" as the notice indicated.

"The purpose of the notice requirement is not to set a trap for the unwary or to place an impediment in the

---

[8] The plaintiff's first attorney prepared the notice after he and the plaintiff had visited the accident site, which the plaintiff had identified.

way of an injured party who has an otherwise meritorious claim. Rather, the purpose of notice is to allow the municipality to make a proper investigation into the circumstances surrounding the claim in order to protect its financial interests." *Pratt* v. *Old Saybrook*, 225 Conn. 177, 182, 621 A.2d 1322 (1993). "Unless a notice, in describing the place or cause of an injury, patently meets or fails to meet this test, the question of its adequacy is one for the jury and not for the court. . . ." *Morico* v. *Cox*, supra, 134 Conn. 223.

The town maintains that the inaccuracies admitted by the plaintiff with respect to the time, place and cause of his fall, as well as the description of his injury conclusively establish its insufficiency. No explanation has been provided, however, of how those inaccuracies, some of which appear to be picayune, hampered the town's investigation of the accident. The jury could reasonably have concluded that they had no impact on whatever investigation the town may have conducted.[9]

Despite the plaintiff's characterization of the discrepancies between his testimony and his written notice as "totally different," we conclude that under the functional test adopted in this state of whether the notice provides sufficient information to conduct an adequate investigation, the jury could reasonably have decided that those discrepancies were insignificant.

IV

In his cross appeal, the plaintiff claims that the trial court incorrectly reduced the $700,000 verdict by deducting the net collateral source benefits he had received from his health insurer because (1) the jury

---

[9] The director of public works for the town of Wallingford, who was responsible for maintaining the public sidewalks of the town, testified that he never conducted any investigation of the plaintiff's fall and that he never saw the written notice before he was called to testify. His department did not investigate the incident until the week before trial.

failed to make a finding of the amount of economic damages included in its verdict, (2) the trial court's finding of economic damages was an improper invasion of the jury's fact-finding function, (3) any reduction for collateral source benefits was improper because the plaintiff's insurance policy contained a provision entitling the insurer to subrogation, and (4) the reduction for collateral source benefits has caused that verdict to be less than the offer of judgment filed by the plaintiff, thus depriving him of an award of prejudgment interest pursuant to General Statutes § 52-192a.[10]

---

[10] General Statutes § 52-192a provides: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and

In the new trial that we have ordered, it is unlikely that the issues that relate to the procedure followed in the first trial of this case regarding the determination of economic damages will be repeated. It is also unlikely that the damages awarded at the second trial will be the same as those in the first trial and that a similar difference between the verdict and the offer of judgment will result as a basis for the plaintiff's claim of prejudgment interest pursuant to § 52-192a. The one issue relating to collateral source payments that is likely to arise again and should be resolved at this time is the plaintiff's third claim, that his insurer is entitled to reimbursement for the medical expenses it has paid on his behalf because of the subrogation provision of his insurance policy. For that reason, the plaintiff claims that no reduction for collateral source benefits should have been made. The disposition of that issue will help to resolve the other issues relating to such payments in the event that they do arise in the second trial.

General Statutes § 52-572h (f) requires that in personal injury actions based on negligence, the court or jury shall specify, inter alia, the "amount of economic damages." General Statutes § 52-225a requires that the award of economic damages be reduced by the amount of collateral source payments the claimant has received for his injuries, less the amount he has paid to secure those benefits, "except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists. . . ." The trial court found that the plaintiff had received collateral source benefits of $191,065.97 from his health insurer for which he had paid $21,380 in premiums. The court, accordingly, reduced the verdict of $700,000 by $169,675.97.

shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

It is undisputed that the plaintiff's health insurance policy contained a subrogation provision entitling his insurer to reimbursement for the medical care benefits it paid out of any recovery for such medical expenses against a third person.[11] Such a provision, however, is contrary to General Statutes § 52-225c, which provides that "no insurer or any other person providing collateral source benefits . . . shall be entitled to recover the amount of any such benefits from the defendant or any other person or entity as a result of any claim or action for damages for personal injury or wrongful death regardless of whether such claim or action is resolved by settlement or judgment. . . ."

The plaintiff claims that, because the insurance policy designates Rhode Island as the "contract state," Rhode Island law applies in determining the construction and validity of any provision of the policy. There is no statute in Rhode Island barring subrogation by a provider of collateral source benefits. The plaintiff resided in Connecticut and there is no evidence that he had any relationship with anyone in Rhode Island relevant to his insurance policy.[12]

"The general rule is that the validity and the construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of

---

[11] The policy provision provides: "If an insured person recovers money for medical expenses due to any injury for which United States Life paid medical care benefits, United States Life must be repaid. The amount repaid will not exceed the smaller of the amount the insured person recovers for medical expenses incurred, or the amount of benefits paid. The repayment will come out of any recovery made, less an adequate adjustment for the costs and legal fees by the insured person to recover the money from a third party."

[12] The plaintiff testified that the insurer's offices were located in New Jersey and that he sent his medical bills there for processing.

operative effect or performance governs its validity and construction." (Internal quotation marks omitted.) *Whitfield* v. *Empire Mutual Ins. Co.*, 167 Conn. 499, 506, 356 A.2d 139 (1975). The evidence does not provide a basis for determining in what state the insurance contract was made. It does indicate, however, that the plaintiff resided in Connecticut and that all of his medical treatment was given in this state. We conclude that Connecticut was the place of performance or operative effect of the policy.

"The privilege of engaging in the insurance business within this state necessarily implies the requirement of conforming to existing statutes, and our legislature frequently has exercised the power to modify the terms of coverage required of insurance policies issued in Connecticut." Id., 507. Although the law of the state chosen by the parties to govern their contractual rights is ordinarily followed, two exceptions are well established: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." 1 Restatement (Second), Conflict of Laws § 187, p. 561 (1971). Under both of these exceptions, we conclude that the applicable law is that of Connecticut. Accordingly, the trial court properly ruled that the subrogation provision of the plaintiff's policy was ineffective because it conflicted with the prohibition against recovery of collateral source benefits in § 52-225c.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.