[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging in the first count that his criminal trial attorney, Gregory St. John, was ineffective in assisting him in that he had an actual conflict of interest in representing the petitioner because (1) he had a personal social relationship with the family of the victim of the offense with which the petitioner was charged; (2) his brother, William, represented the family of the victim of the offense with which the petitioner was charged; (3) he knew or should have known of the conflict as he knew that the petitioner's family had been referred to him by his brother, William, who declined the representation due to such conflict; (4) his brother, William, attended court with the family of the victim during the selection of the petitioner's jury; (5) during the selection of the jury on the second day, May 29, 1999, he informed the petitioner and the court of his personal acquaintance with the family of the victim but did not advise the petitioner of the nature and extent of the conflict nor of his right to conflict-free counsel nor did he afford him the opportunity to consult with other counsel to decide whether to waive such conflict. In the second count the petitioner alleges that the trial court knew or should have known of counsel's conflict of interest yet failed to inquire about such conflict.
The arrest, and the conviction of the petitioner on the charge of murder arose from the death of Jeffrey Rabuska at or near 417 East Main Street, Waterbury on January 6, 1995. His CT Page 531 conviction was as a result of his plea pursuant to the Alford Doctrine for a plea bargained sentence of thirty (30) years.
The petitioner called two (2) witnesses, his criminal trial attorney, St. John (hereinafter Gregory) and St. John's brother, William St. John (hereinafter William).
Gregory testified that he represented the petitioner on charges of murder, assault in the first degree and violation of probation. He has supplied a copy of the petitioner's criminal trial file to the petitioner in which there are four (4) office-received telephone messages. Petitioner's Exhibit 1. One dated "1/24/95" states it is from "Miss Myers" "referred by your brother — wants an appt before Thurs. — son has ct Thurs. murder charge — Bill is rep. The family of victim." Gregory does not recall a referral or any discussion of it and did not discuss his brother's representation of the victim's family. During jury selection he recognized a person in the courtroom whom he had seen at various social occasions whom he determined on speaking to him to be the stepfather of the victim of his client's charged offense. He brought it to the attention of the petitioner and indicated that he thought that there was no conflict of interest because he never initiated a call to the victim's parents nor a direct conversation with them. Except for the introduction to the stepfather and mother of the victim by friends several years ago and seeing them five (5) or six (6) times at such social occasions, he has not seen them for several years. The petitioner desired that he continue as his attorney and he disclosed this to the trial judge. See Petitioner's Exhibit 2. He continued to represent the petitioner through many pretrial conferences from the initial state offer of fifty (50) years into jury selection when the judge's offer was thirty (30) years which the petitioner accepted.
William testified that he recalled the telephone call of Mrs. Myers but could not represent her son because his partner, William Stevens, had represented the victim, Rabuska. William knew the victim's mother. He produced copies of two files of Stevens on Rabuska. One of the files which was opened and closed before the incident of the death of Rabuska, was a motion for seized property in Meriden. Petitioner's Exhibit 5. The second file opened on February 15, 1995 and closed in 1996 was Stevens' representation on the estate of the decedent victim. SeePetitioner's Exhibit 6 for identification. William testified that he probably was aware that his brother represented the petitioner CT Page 532 but never discussed with him the petitioner's case nor the files of Rabuska. William had no personal knowledge of the Rabuska files. He never met Rabuska and doesn't remember whether he was in court while the petitioner's proceedings occurred but may have. Gregory was not a member of his firm.
"In a case of a claimed actual conflict of interest . . . in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance. Phillips v. Warden, 220 Conn. 112, 133." State v.Crespo, 246 Conn. 665, 689. It is not that counsel represents more than one client which deprives his client of conflict-free representation but that his client's interests conflict with the interests his attorney has for his other clients or third parties. State v. Henton, 50 Conn. App. 521, 526-7. To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest impairment or compromise of his interests for the benefit of another party. Danner v. United States, 820 F.2d 1166, 1169
(11th Cir. 1987), cert. denied, 484 U.S. 1012, (1988). Blakeneyv. Commissioner of Correction, 47 Conn. App. 368, 585, cert. denied, 244 Conn. 913 (1998).
The petitioner has shown no specific instances in the record which suggest impairment or compromise of his interests for the benefit of another party. Both brothers testified that they never discussed with each other the petitioner's case nor the Rabuska files. In fact William had no personal knowledge of the Rabuska files. Even if Gregory had been alerted by the telephone message dated "1/24/95" and had received full disclosure on that date of the files of his brother's firm, there would only have been the closed file of the motion for seized property in Meriden since the file of the estate was not opened until February 15, 1995 after Gregory's representation of the petitioner began which would not be "representation directly adverse to a person who the lawyer knows is represented by the other lawyer (sibling)." Rule 1.8(i).
Gregory indicated to the petitioner on the second day of trial the casual knowledge of the victim's mother and stepfather several years before and left it to the petitioner if he wanted other counsel because of it. He likewise made it known to the court that he felt there was no conflict and that his client CT Page 533 wished to have him proceed as his counsel. The petitioner has not demonstrated that that casual knowledge created conflict of interest nor that it adversely effected his lawyer's performance.
 II.
The petitioner alleges that the trial court knew or should have known of counsel's conflict of interest yet failed to inquire about such conflict. Where the defendant raised no objection at trial, as the petitioner herein, he must demonstrate that an actual conflict of interest adversely affected his lawyer's performance in order to obtain reversal of his conviction. State v. Crespo, supra, 686. As stated in Section I, he has failed to do so.
For the above reasons the court denies the petition.
Thomas H. Corrigan
Judge Trial Referee