G. CLINTON MERRICK ET AL. *v.* PEARSON C.
CUMMIN ET AL.
(AC 27045)

Flynn, C. J., and McLachlan and West, Js.

Argued October 17, 2006—officially released April 17, 2007

*David M. Wallman,* for the appellant (named plaintiff).

*Stewart I. Edelstein,* with whom were *David A. Ball* and *Barbara M. Schellenberg,* for the appellees (defendants).

*Opinion*

WEST, J. The plaintiff G. Clinton Merrick[1] appeals from the judgment of the trial court denying his application to vacate an arbitration award in favor of the defendants, Pearson C. Cummin and Christopher P. Kirchen. On appeal, the plaintiff claims that the court improperly denied his application to vacate the arbitration award because the award violates Connecticut public policy.[2] We affirm the judgment of the trial court.

The parties formed a limited partnership known as Consumer Venture Associates II, L.P. (Consumer Venture Associates), under Delaware law in 1989. The purpose of Consumer Venture Associates was to serve as the general partner of certain venture capital investment funds. The limited partnership agreement provided that disputes among the parties were to be settled

---

[1] The other plaintiff in this case, George M. Oakes, is not a party to this appeal. We therefore refer to Merrick as the plaintiff. We also omit facts regarding Oakes because they are not relevant to this appeal.

[2] The plaintiff also claims that the court should have held an evidentiary hearing before denying his application to vacate the arbitration award, but he concedes that he did not request an evidentiary hearing. The court was therefore not required to conduct an evidentiary hearing.

by arbitration in Greenwich. In 1996, the plaintiff initiated an arbitration proceeding against the defendants. The plaintiff claimed, inter alia, that the defendants had breached their fiduciary duty as general partners of one of the venture capital investment funds, a limited partnership known as Consumer Venture Partners II, L.P. (Consumer Venture Partners). In 1997, the parties signed a settlement agreement in which the plaintiff withdrew the arbitration proceeding with prejudice and promised that he would not initiate any future arbitration proceeding against the defendants in connection with Consumer Venture Associates and Consumer Venture Partners.

One of the limited partners of Consumer Venture Partners was Montgomery Ward & Co., Inc. (Montgomery Ward), the department store chain. In 2001, Montgomery Ward sold its interest in Consumer Venture Partners to the defendants, who did not inform the plaintiff of the sale. At that time, Consumer Venture Partners held approximately 1.4 million shares of stock in Select Comfort Corp. (Select Comfort), a retailer of inflatable mattresses. Those shares were valued at approximately $1 each when the defendants acquired Montgomery Ward's interest in Consumer Venture Partners. Soon thereafter, the Select Comfort shares rapidly increased in value to approximately $32 each. The defendants then dissolved Consumer Venture Partners in early 2002 and distributed its assets to its partners.

When the plaintiff discovered that the defendants had purchased Montgomery Ward's interest in Consumer Venture Partners, he demanded that they disgorge the profit that he would have earned if they had purchased the interest for Consumer Venture Associates rather than for themselves. The defendants refused to accede to the plaintiff's demand. The plaintiff then initiated an arbitration proceeding against the defendants, claiming that they had breached their fiduciary duty as general

partners of Consumer Venture Associates by usurping the opportunity to buy Montgomery Ward's interest in Consumer Venture Partners. The defendants moved to dismiss the arbitration proceeding on the ground that the parties' 1997 settlement agreement prohibited the plaintiff from initiating any future arbitration proceeding against them in connection with Consumer Venture Associates and Consumer Venture Partners. The arbitrators agreed that the plaintiff was foreclosed from challenging the defendants' actions regarding those limited partnerships and therefore granted the motion to dismiss.

The plaintiff subsequently filed an application with the Superior Court to vacate the arbitration award in favor of the defendants. The court rendered judgment denying the application, and the plaintiff then filed this appeal. The plaintiff claims on appeal that the arbitration award must be vacated because it violates Connecticut public policy. The plaintiff contends that the public policy at issue favors the enforcement of fiduciary duty and prohibits a person from agreeing to waive future claims stemming from another person's breach of that duty. In other words, the plaintiff invites us to conclude that his promise in the 1997 settlement agreement not to initiate any future arbitration proceeding against the defendants in connection with Consumer Venture Associates and Consumer Venture Partners is void because it violates Connecticut public policy. The plaintiff invites us to reach that conclusion even though all of the parties to the settlement agreement were equally sophisticated business partners. We decline the plaintiff's invitation.[3]

---

[3] The defendants argue that we should not consider the plaintiff's Connecticut public policy claim because the court did not address it, and the plaintiff failed to file a motion for articulation. We disagree. As we will explain, we employ the de novo standard of review to a claim that an arbitration award violates a public policy of this state. See *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 655, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126

We first set forth the applicable law. "[W]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted,[4] the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . [W]here [however] a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy. . . .

S. Ct. 479, 163 L. Ed. 2d 363 (2005). We therefore need not consider the trial court's view of the public policy issue.

The defendants also argue that the plaintiff's claim is inappropriate because it focuses on Connecticut public policy while the limited partnership agreement for Consumer Venture Associates is governed by Delaware law. The defendants correctly point out that the law of the state chosen by the parties governs their contractual rights unless one of two exceptions applies: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." 1 Restatement (Second), Conflict of Laws § 187, p. 561 (1971); see also *Pajor* v. *Wallingford,* 47 Conn. App. 365, 383, 704 A.2d 247 (1997), cert. denied, 244 Conn. 917, 714 A.2d 7 (1998).

The arbitrators found that the defendants were Connecticut residents and may have conducted business related to Consumer Venture Associates and Consumer Venture Partners in Connecticut when the parties signed the settlement agreement in 1997. Because there is a possibility that Connecticut has a materially greater interest in this case than Delaware, and that Connecticut would be the state of the applicable law if the parties had not chosen Delaware law, we will consider the plaintiff's claim regarding Connecticut public policy.

[4] In the present case, the scope of the submission was unrestricted because the limited partnership agreement for Consumer Venture Associates provided that all matters in dispute would be settled by arbitration. If the limited partnership agreement had confined arbitration to selected matters in dispute, the submission would have been restricted.

"An arbitrator's award may be vacated if it violates clear public policy. . . . This rule is an exception to the general rule restricting judicial review of arbitral awards. . . . The exception, however, is narrowly construed and . . . is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Citations omitted; internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 654–55, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). "[T]he party seeking to establish the public policy bears a heavy burden of showing the existence of such a well-defined and dominant public policy. . . . [Our Supreme Court has] in the past found a clear statement of that policy in some objectively stated form, such as a statute, city charter or rule of professional conduct." Id., 661.

In support of his argument that this state recognizes a public policy that fiduciary duty must be enforced and that the parties to a contract cannot agree to waive future claims regarding breach of that duty, the plaintiff relies on (1) Connecticut common law and (2) the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

As to this state's common law, the plaintiff focuses on *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 215–28, 635 A.2d 798 (1994), which discussed the importance of fiduciary duty in the context of reviewing a trial court's jury instructions on that duty. The plaintiff also directs us to various cases determining that the contractual release of future claims violates public policy. See, e.g., *Brown* v. *Soh*, 280 Conn. 494, 501–507, 909 A.2d 43 (2006) (employee's agreement to release

employer from liability for negligence); *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 326–38, 885 A.2d 734 (2005) (en banc) (snowtuber's agreement to release winter sports recreational facility from liability for negligence); *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 481–83, 650 A.2d 1240 (1994) (employee's agreement to release employer from future claims for workers' compensation benefits); *Haggerty* v. *Williams*, 84 Conn. App. 675, 678–82, 855 A.2d 264 (2004) (mortgagor's agreement to waive statute of limitations defense).

None of the cases cited by the plaintiff indicates that there is a well-defined and dominant public policy in Connecticut in favor of the enforcement of fiduciary duty and against the voluntary waiver of future claims concerning breach of that duty. Furthermore, none of those cases involved factual circumstances similar to the present case, in which equally sophisticated business partners signed a settlement agreement. At most, the cases cited by the plaintiff indicate a generalized concern with fiduciary duty and the contractual release of certain types of future claims. That generalized concern, however, is not enough to enable the plaintiff to satisfy his heavy burden of showing the existence of a Connecticut public policy prohibiting equally sophisticated business partners from signing a settlement agreement providing for the waiver of future claims regarding breach of fiduciary duty. See *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 273 Conn. 664–65.

As to CUTPA, "[t]he purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy." (Internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 380, 880 A.2d 138 (2005). A cause of action

regarding unfair trade practices can be brought pursuant to CUTPA, but CUTPA by itself is clearly not a source of public policy concerning fiduciary duty.

When the plaintiff signed the settlement agreement in 1997, he voluntarily relinquished his right to initiate future arbitration proceedings against the defendants. We recognize that the plaintiff now may regret that provision of the settlement agreement in light of the defendants' decision in 2001 to purchase Montgomery Ward's interest in Consumer Venture Partners for themselves rather than for Consumer Venture Associates. The parties to the settlement agreement, however, were equally sophisticated business partners and voluntarily accepted the provisions of that agreement. We cannot afford the plaintiff any relief because he has failed to identify a Connecticut public policy that would justify vacating the arbitration award in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.